HARRIS et al., Appellants,

v.

OHIO DEPARTMENT OF TRANSPORTATION et al., Appellees.

HARRIS et al., Appellants,

v.

CITY OF CANTON et al., Appellees.

[Cite as *Harris v. Ohio Dept. of Transp.* (1992), 83 Ohio App.3d 125.]

Court of Appeals of Ohio,
Franklin County.

Nos. 92AP–513, 92AP–514.

Decided Oct. 6, 1992.

*Scanlon & Gearinger Co., L.P.A., James A. Rudgers* and *Terence E. Scanlon,* for appellants.

*Lee Fisher,* Attorney General, and *Eric A. Walker,* Assistant Attorney General, for appellee Ohio Department of Transportation.

*Thomas M. Bernabei, Robert G. Rubin* and *Joseph Martuccio,* for appellee city of Canton.

*G. Timothy Fischer,* for appellee B&B Construction.

*Robert B. Daane,* for appellee Brian Lee Teuton.

*Donald E. Worthing,* for appellee Northern Ohio Paving Company.

*James Sweeney,* for appellee Hammontree & Associates.

---

BOWMAN, Judge.

In the early morning hours of September 24, 1988, appellants, Mark Harris and Matt Karam, were passengers in a car driven by Brian Teuton. On their way home from an evening in Kent, the three were headed west on U.S. Route 62 in Canton, Ohio, when Teuton fell asleep at the wheel and went off the road onto the

median strip. Just as Teuton regained control, the vehicle hit an embankment, became airborne, flipped over, and traveled on its roof before coming to a halt. Teuton was not injured, but Harris was trapped in the car and is now a quadriplegic, and Karam was briefly hospitalized with serious injuries.

Appellants sued the Ohio Department of Transportation ("ODOT") in the Ohio Court of Claims, alleging the ODOT's failure to remove the embankment was the proximate cause of the accident. Appellants also sued Teuton, the city of Canton ("Canton"), B&B Construction Company, and Northern Ohio Paving Company, two contractors who had worked on the relevant portion of the highway, in the Summit County Court of Common Pleas. The contractors and Canton then filed third-party complaints against ODOT. Pursuant to R.C. 2743.03(E)(1), this second cause was removed to the Ohio Court of Claims. ODOT followed with a third-party complaint against the two contractors and Canton, later dismissing its complaint against the contractors.

Ultimately, Canton, the contractors, and ODOT filed separate motions for summary judgment, which the trial court granted on March 20, 1992. In its decisions granting summary judgment, the court found that, because the area in question was located within the Canton city limits, ODOT did not have a duty to maintain it. The court further held that, although Canton had a statutory duty to keep public highways free from nuisance, the embankment was not located on a traveled portion of the highway and, therefore, Canton was not liable. The court additionally found that, because Canton had the discretion to either place or remove an embankment within its city limits, it was immune from suit for exercising that discretion. Finally, the court found that the sole proximate cause of the accident was Teuton's falling asleep at the wheel, and not the presence of the embankment.

Appellants now raise one assignment of error:

"The trial court erred in granting summary judgments to the City of Canton and the State of Ohio."

Summary judgment is only proper where the trial court, construing the facts in a light most favorable to the nonmovant, determines there are no genuine issues of material fact, and that the movant is entitled to judgment as a matter of law. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. "A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

Appellants argue that the trial court should not have granted summary judgment because appellants' evidence raised a question of fact whether the embankment was the proximate cause of the accident, and whether the alleged

failure of ODOT and Canton to remove the embankment as a dangerous obstruction constituted a breach of a duty to keep public highways free from nuisance.

The embankment at issue was identified in the depositions as an earthen dike, installed to direct water into a catch basin that was located at the lowest point of the median. Several engineers and road workers indicated that the embankment was possibly supposed to rise six inches above the top of the catch basin, although they did not know its actual height, or whether changes in the design specifications had been adopted at the time of the embankment's construction. However, the Canton police officer who filed the accident report stated that the embankment was approximately one and one-half to two feet in height. The evidence indicated that the embankment, just seven feet wide, was not intended as a crossover for vehicles making a U-turn, but there was some evidence that the embankment had been illegally used as a crossover.

█ Because the section of highway in question is located within Canton city limits, the Political Subdivision Tort Liability Act, R.C. Chapter 2744, applies. R.C. 2744.02(B)(3) provides:

"Political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivision open, in repair, and free from nuisance * * *."

The Ohio Supreme Court has recently determined that prior case law interpreting R.C. 723.01 is applicable to a case alleging liability under R.C. 2744.-02(B)(3). *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Road Comm.* (1992), 63 Ohio St.3d 318, 587 N.E.2d 819. R.C. 723.01 similarly provides that municipal corporations are to keep highways and streets open for the purpose of affording the public a safe means of travel.

In *Manufacturer's Natl. Bank of Detroit,* the court held, at paragraph one of the syllabus:

"A permanent obstruction to visibility, within the highway right-of-way, which renders the regularly travelled portions of the highway unsafe for the usual and ordinary course of travel, can be a nuisance for which a political subdivision may be liable under R.C. 2744.02(B)(3)."

The court further stated, at 321–322, 587 N.E.2d at 822–823:

"R.C. 723.01 obligates municipal corporations to keep highways and streets open for the purposes for which they were designed and built—to afford the public a safe means of travel. * * *

"Furthermore, case law construing R.C. 723.01 has focused on whether the alleged nuisance rendered the roadway unsafe for the usual and ordinary modes of travel.   * * *

" * * *

"The township's duty under R.C. 2744.02(B)(3) extends to conditions in the right-of-way that directly affect the highway's safety for the regular and ordinary course of traffic.   * * *

" * * *

" * * * [T]he focus should be on whether a condition exists within the political subdivision's control that creates a danger for *ordinary traffic* on the *regularly travelled* portion of the road."   (Emphasis added.)

In *Manufacturer's Natl. Bank of Detroit,* the court concluded that a cornfield, which was situated on land abutting the roadway, nevertheless constituted a nuisance because it rendered the regularly traveled portions of the highway unsafe for the usual and ordinary course of travel.   *Id.* at 323, 587 N.E.2d at 823. Thus, the court recognized that an obstruction which was not on the roadway could be the cause of an accident occurring on the roadway.

By contrast, in the case at bar, appellants assert that, although both the obstruction causing the accident and the accident itself were located away from the roadway, appellees nevertheless could be liable.   However, under *Manufacturer's Natl. Bank of Detroit* and other relevant case law, the state or its political subdivision may be liable only if the embankment was a condition in the right-of-way which directly jeopardizes the safety of the usual and ordinary traffic on the roadway.   In *Manufacturer's Natl. Bank of Detroit,* the court distinguished an earlier decision, *Strunk v. Dayton Power & Light Co.* (1983), 6 Ohio St.3d 429, 6 OBR 473, 453 N.E.2d 604, on the basis that, in *Strunk,* the light pole placed adjacent to the shoulder of the roadway did not jeopardize the safety of ordinary traffic on the highway.

In *Young v. Dayton* (Apr. 14, 1992), Franklin App. No. 91AP–1260, unreported, 1992 WL 82720, motion for reconsideration overruled (Aug. 25, 1992), this court upheld a summary judgment for the defendants, determining that the unillumi-nated concrete overpass pillars struck by the plaintiff's vehicle while located within the median, but twenty-seven feet from the traveled portion of the roadway, were not sufficiently close to the road to give rise to a duty on the part of the city to illuminate the pillars.   Thus, we held by implication that the pillars, although in the right-of-way, were too remote from the roadway to directly jeopardize the safety of traffic in the roadway.

Appellants argue that, but for the embankment, the vehicle in which they were traveling would not have flipped over, and their injuries would not have been as

severe. They contend that the placement of the embankment in this case defeated the purpose of a median strip, which is to provide an emergency stopping zone for vehicles leaving the road.

To this end, appellants argue that, like the shoulder in *Dickerhoof v. Canton* (1983), 6 Ohio St.3d 128, 130, 6 OBR 186, 188, 451 N.E.2d 1193, 1195, the median serves a purpose which includes emergency travel, and that the embankment constitutes a nuisance because it defeats that purpose. This argument is not well taken.

In *Dickerhoof,* the vehicle left the roadway because it swerved to miss an object in the roadway and, thus, had to drive on the shoulder. In the case before us, appellants do not argue that there was an obstruction in the roadway which forced them into the median; rather, it was the negligence of the driver that caused the vehicle to leave the roadway. Moreover, there was uncontradicted deposition testimony that, unlike a paved shoulder, a median is not designed for driving, but for separating lanes of traffic.

Appellants also assert that the embankment was, in fact, an illegally installed crossover which presented exactly the type of hazard ODOT had wanted to eliminate in undertaking Project 459–80. Deposition testimony demonstrated that the embankment had not been constructed as a crossover, even though motorists occasionally and illegally used it as such. Further, the evidence indicated that the hazard ODOT sought to alleviate in removing crossovers under Project 459–80 was that of crossovers which lacked sufficient approach area, so that they could not be used safely. Here, the accident did not result from the use of the crossover, but from the use of the median, so that the hazard Project 459–80 was designed to eliminate was not the type of hazard alleged to have been created by the condition in this case.

Finally, in *Dickerhoof,* there was evidence that the shoulder was in poor repair and that a chuckhole had caused the accident. In this case, although there was conflicting testimony regarding exactly how a proper catch basin and earthen dike should be constructed, the evidence did not support the view that the condition of the embankment on the night of the accident constituted a nuisance to traffic on the roadway but, rather, only when the vehicle left the regularly traveled portion of the highway.

Thus, the embankment in the median was not a condition in the right-of-way which directly jeopardized the safety of the usual and ordinary traffic on the roadway, nor did any emergency purpose the median may have had render the state or city liable for the placement of the embankment.

■ The trial court also correctly found ODOT had no duty to maintain and/or repair the median strip, as it was located within Canton city limits. R.C. 5501.31 provides:

"The director of transportation shall have general supervision of all roads comprising the state highways system.  * * *

" * * *

" * * * [N]o duty of constructing, reconstructing, widening, resurfacing, maintaining, or repairing state highways within municipal corporations, or the bridges and culverts thereon, shall attach to or rest upon the director, but he may construct, reconstruct, widen, resurface, maintain and repair the same with or without the cooperation of any municipal corporation, or with or without the cooperation of boards of county commissioners upon each municipal corporation consenting thereto."

■  Although R.C. 5501.11(D) requires ODOT to cooperate with municipal corporations in the maintenance of public roads, ODOT has no duty to undertake any maintenance or improvement project within municipal corporation limits. *Lunar v. Ohio Dept. of Transp.* (1989), 61 Ohio App.3d 143, 149, 572 N.E.2d 208, 211.  ODOT's previous work in the immediate area did not change the fact that ODOT had no statutory duty to maintain the roads within the city of Canton.

Appellants cite *DiCesare v. Ohio Dept. of Transp.* (Oct. 16, 1984), Franklin App. No. 84AP–123, unreported, 1984 WL 147287, and *Lattea v. Akron* (1982), 9 Ohio App.3d 118, 9 OBR 182, 458 N.E.2d 868, for the principle that, where ODOT assumes a duty to maintain, it may be responsible for the failure to do so. Neither case is dispositive, however.  In *Lattea,* we found that the state had assumed a duty with regard to a project that was in progress at the time of the accident; in *DiCesare,* we held there were insufficient facts to determine whether the state had assumed a duty.  Appellants urge that it is at least an issue of fact whether the state assumed a duty.  Even so, it must be a *genuine* issue of *material* fact to survive summary judgment.

■  This issue is not material to the potential negligence of either Canton or ODOT, since even a failure to maintain constituting a breach of an assumed duty does not result in liability where there was no proximate cause as a matter of law. Negligence is without legal consequence unless it is a proximate cause of an injury.  *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 28 OBR 410, 411, 504 N.E.2d 19, 21.  Thus, unless appellants sufficiently alleged that a breach of an assumed duty proximately caused the accident, there was no genuine issue of material fact whether ODOT had assumed a duty.  Based upon the foregoing discussion, we reject appellants' argument that the trial court should have determined it was a question of fact whether ODOT had breached an assumed duty.

■  Finally, appellant argues that the trial court should not have found that Teuton's falling asleep at the wheel removed any possible liability on the part of

Canton. Although negligence must be the proximate cause of injury, *Osler*, the negligence of the driver does not excuse the negligence of a third party in maintaining a nuisance adjacent to the roadway. *Ohio Bell Tel. Co. v. Lung* (1935), 129 Ohio St. 505, 2 O.O. 513, 196 N.E. 371.

Assuming *arguendo* that Canton created a nuisance by its construction of the embankment, that nuisance did not render the regularly traveled portion of the highway unsafe for the usual and ordinary course of travel.

Appellants' assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

JOHN C. YOUNG, P.J., and DESHLER, J., concur.