VALESCU et al., Appellants and Cross–Appellees,

v.

CLEVELAND METROPARKS SYSTEM et al., Appellees and Cross–Appellants.

[Cite as *Valescu v. Cleveland Metroparks Sys.* (1993), 90 Ohio App.3d 516.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63693.

Decided Sept. 27, 1993.

---

*Joseph A. Dubyak* and *Paul V. Wolf,* for appellants and cross-appellees.

*Arter & Hadden, Donna Congeni, Frank R. Osborne and Robert J. Hanna,* for appellee and cross-appellant Cleveland Metroparks System.

*Squire, Sanders & Dempsey* and *Damond R. Mace,* for appellee and cross-appellant Cleveland Electric Illuminating Co.

---

DYKE, Chief Judge.

On September 14, 1987, George Valescu was traveling home on the Big Creek Parkway located in the Cleveland Metroparks System. George was riding a friend's motorcycle, borrowed for the purpose of visiting his girlfriend at the restaurant where she was employed. At one point George left the traveled portion of the road and crossed the two feet of paved berm. The motorcycle left marks in the gravel at the side of the paved road to indicate that George returned to the pavement once and then ran off of the road a second time. The motorcycle traveled onto a driveway extending from the Big Creek Parkway. At this point skid marks indicate that George attempted unsuccessfully to use his brakes. He crossed the driveway and drove directly into a street light. The accident was fatal.

In October 1991, appellant and cross-appellee, John Valescu, filed an amended complaint on behalf of his brother's estate alleging negligence and failure to maintain the roadway against Cleveland Metroparks System ("CMS") and negligence and creation of a nuisance against Cleveland Electric Illuminating Company ("CEI"). The amended complaint also alleged a survivorship action against both defendants under R.C. 2125.01.

In April 1992 at the conclusion of appellant's case, the court granted CMS's motion for a directed verdict on the grounds of sovereign immunity. The trial court noted that there had been no evidence of wilful or wanton misconduct on the part of CMS to pierce the immunity provided by R.C. 2744.03(A)(3) and (5). After the conclusion of the trial against CEI the jury returned a verdict for defendant-appellee.

Appellant, representing George Valescu's estate, appeals from both the directed verdict in favor of CMS and the jury verdict in favor of CEI. He asserts three assignments of error.

I

"The trial court erred to the prejudice of the plaintiffs-appellants in granting defendant-appellee Cleveland Metroparks System's motion for a directed verdict."

■ Appellant asserts that evidence existed to show that the road was in a state of disrepair and constituted a nuisance. Specifically, appellant argued that the level of the pavement was six inches higher than the level of the gravel on the shoulder, rendering it impossible for the decedent to return to the paved portion of the road. Furthermore, appellant argues that the white colored area denoting the two-foot berm was worn away.

R.C. 2744.02(B)(3) subjects political subdivisions to possible liability "for injury, death, or loss to persons or property caused by their failure to keep public roads * * * within the political subdivision open, in repair, and free from nuisance * * *." Subdivision (B) of this code section is subject to R.C. 2744.03, the section granting immunity to political subdivisions where the cause of injury or death results from a governmental function requiring discretion on the part of the political subdivision. Therefore, although the political subdivision has a duty to keep roadways open and free from nuisance, the sovereign immunity defense may be raised where the liability based upon that duty involves a discretionary governmental function.

R.C. 2744.03(A) allows a political subdivision to raise immunity as a defense under the following circumstances:

"(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

" * * * *

"(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

Appellant cites an unreported case from this court as support for the proposition that "R.C. 2744.03(A)(5) cannot be used to abrogate" the duty imposed under R.C. 2744.02(B)(3) to keep open and free from nuisance a political subdivision's roads, sidewalks and public grounds. *Ross v. Solon City School Dist. Bd. of Edn.* (July 2, 1992), Cuyahoga App. Nos. 62978 and 63020, unreported, at 11, 1992 WL 159714, *5. While *Ross* does uphold the liability of the school board, the facts of that case clearly indicate that the injury resulted from a reckless manner of maintaining the concrete steps in front of the school. The school board could not be heard to argue that it made a discretionary decision to allow the steps to

deteriorate and crumble, and therefore enable the board to raise the defense of sovereign immunity under R.C. 2744.03(A)(5). We are not faced with such an obvious state of neglect under the facts of the present case.

The wearing of the chip and seal berm and the lower level of the sloping gravel embankment beyond the berm do not clearly constitute the kind of nuisances which would allow appellant to rebut CMS's defense of sovereign immunity. The state of facts presented at trial does not indicate that CMS's failure to alter the level of the gravel or replace the worn section of the berm was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

The cases in which liability was properly asserted against the political subdivision or municipality involved nuisances which rendered the road unsafe for normal travel. See *Dickerhoof v. Canton* (1983), 6 Ohio St.3d 128, 6 OBR 186, 451 N.E.2d 1193 (chuckhole in the shoulder immediately adjacent to the highway eighteen feet long and sixteen inches wide caused death to motorcyclist who swerved to avoid object in the highway). The Ohio Supreme Court has recently held that:

"In determining a township's duty under R.C. 2744.02(B)(3) or a municipality's under R.C. 723.01, the focus should be on whether a condition exists within the political subdivision's control that creates a danger for ordinary traffic on the regularly travelled portion of the road." *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Rd. Comm.* (1992), 63 Ohio St.3d 318, 322, 587 N.E.2d 819, 823.

In that case the court did not limit the duty to those obstructions or nuisances on the road itself, but ruled that:

"[A] permanent obstruction to visibility in the right-of-way, which renders the regularly travelled portions of the highway unsafe for the usual and ordinary course of travel, can be a nuisance for which a political subdivision may be liable under R.C. 2744.02(B)(3)." *Id.* at 323, 587 N.E.2d at 824. See, also, *Harris v. Ohio Dept. of Transp.* (1992), 83 Ohio App.3d 125, 614 N.E.2d 779.

No liability attached where an earthen catch basin constructed in a highway median did not constitute "a nuisance to traffic on the roadway but, rather, only when the vehicle left the regularly traveled portion of the highway." *Harris* at 130, 614 N.E.2d at 783.

█ The lower court properly granted CMS's motion for directed verdict, where, upon the determinative issue of CMS's sovereign immunity defense, reasonable minds could come to but one conclusion upon the evidence submitted. The decision to leave the berm and the gravel at different levels and the failure to replace the worn chip and seal layer on the berm were not nuisances which rendered the regularly traveled portion of the road unsafe for the usual and ordinary course of travel. Sovereign immunity exists to prevent liability from

attaching where the nuisance does not render the road unsafe for normal travel and the judgment of the political subdivision as to the condition of the road cannot be challenged as exercised with malicious purpose, in bad faith, or in a wanton or reckless manner. Because the condition of the road did not render it unsafe for normal travel, no evidence was presented to support the assertion that CMS exercised its judgment with malicious purpose, in bad faith, or in a wanton or reckless manner.

■ Under this assignment of error appellant also argues that CMS is liable for the negligent design of the road and its failure to erect reflectors along the curve to warn vehicles. This argument is not well taken. These decisions fall squarely within the definition of a discretionary governmental function and sovereign immunity applies as a defense to these asserted bases of liability.

The Ohio Supreme Court has determined that the decision as to whether to install traffic control devices is discretionary, entitling the municipality to immunity from tort liability. See *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 525 N.E.2d 808. Likewise, the design of the road itself is a planning function of the political subdivision, entitling the subdivision to immunity as to liability arising from the design. R.C. 2744.03(A)(3).

Appellant's first assignment of error is overruled.

## II

"The trial court erred to the prejudice of the plaintiffs-appellants in granting defendants-appellees' motions in limine to preclude the plaintiffs from introducing evidence of prior accidents at and near the location of the accident which is the subject of this action."

■ Appellant argues that evidence of prior accidents would have supported his theory that CMS acted recklessly in its failure to adjust the level of the gravel at the side of the road, replace the worn berm covering and install warning reflectors. Appellant's argument can be construed to assert that the evidence of prior accidents indicates that CMS knew the area was unsafe for normal travel. Appellant proffered the evidence into the record, allowing this court to review the evidence of prior accidents under the standard put forth by the Ohio Supreme Court in *Renfro v. Black* (1990), 52 Ohio St.3d 27, 556 N.E.2d 150. We do not find that the evidence of prior accidents is relevant to the issues presented in this case.

Appellant proffered evidence of several prior accidents which occurred near the area where appellant's brother hit the street light. One accident occurred in November 1983 under wet road conditions. Another accident occurred in January 1982 under icy conditions where the driver had been drinking. Also

occurring in 1982 was an accident in which the driver stated that an oncoming car appeared to be driving left of center and forced him off of the road and into the pole. In 1985 the road was substantially altered. The chip and seal berm was added, the gravel shoulder was added for drainage and the road itself was repaved. After these changes in the road, a neighbor would have testified, two more accidents occurred of which he did not have firsthand knowledge, but knew that the pole had been hit sometime during the night.

■ Ohio law requires that evidence of prior accidents is only admissible for the purpose of supporting the element of knowledge if " 'the proponent of the evidence shows that the accidents occurred under circumstances substantially similar to those at issue in the case at bar. * * *.' " *Renfro v. Black, supra,* 52 Ohio St.3d at 31, 556 N.E.2d at 154, quoting *McKinnon v. Skil Corp.* (C.A. 1, 1981), 638 F.2d 270, 277.

We do not find that the proffered evidence shows how the prior accidents were substantially similar to George Valescu's accident so as to render the evidence admissible, especially in light of the evidence that the road was substantially changed from the time of three of the accidents and the one at issue here. The trial judge did not abuse his discretion in granting appellees' motions *in limine* to exclude the evidence of prior accidents.

Appellant's second assignment of error is overruled.

### III

"The trial erred to the prejudice of the plaintiffs-appellants in overruling their motion in limine to exclude the blood-alcohol test results of the plaintiffs' decedent, George Valescu."

■ Appellant argues that the blood-alcohol test should have been excluded under doctor-patient privilege, citing R.C. 2317.02(B). Appellant's argument is not well taken. This court has affirmed the lower court's directed verdict on the basis of sovereign immunity as to defendant CMS. The admission of the blood-alcohol test is not relevant to the sovereign immunity defense. Therefore, appellant was not prejudiced by the admission. As to defendant CEI, we do not find that the admission of the blood-alcohol test result was improper so as to reverse the jury's verdict.

■ Evidence of the decedent's blood-alcohol level was clearly relevant to show possible impairment, evidence which would tend to seriously weaken plaintiff's case on the issue of causation. This court held, in another civil action alleging negligent operation of a motor vehicle, that a test ordered by the police in furtherance of the accident investigation and not used to aid in the treatment

of plaintiff's injuries was not a "communication" in the sense that the word is used in R.C. 2317.02(B). *Smolinski v. Crystal* (Apr. 2, 1987), Cuyahoga App. No. 51911, unreported, 1987 WL 9135. That case differs from the present one in that the plaintiff consented to the administration of the test. Obviously, the deceased in the case at bar did not give his consent; yet, similarly, the test was administered in furtherance of an investigation and was not used to aid in the treatment of his injuries. In that the results were obtained under similar conditions for identical purposes, we hold that the test result does not constitute a "communication" and, therefore, is admissible.

The trial court did not abuse its discretion in denying appellant's motion *in limine* to exclude evidence of the decedent's blood-alcohol level.

Appellant's third assignment of error is overruled.

The lower court's decision to grant defendant CMS's motion for a directed verdict is affirmed. The jury's verdict in favor of defendant CEI is also affirmed.

Both defendants included cross-assignments of error as alternative support for the trial court and jury decisions, in the event that appellant prevailed on one of his asserted assignments of error. R.C. 2505.22 requires a reviewing court to pass upon assignments of error raised by an appellee only before reversing a final order, judgment or decree in whole or in part. The Ohio Supreme Court has construed that provision to mean that:

" 'Assignments of error of an appellee who has not appealed from a judgment may be considered by a reviewing court only when necessary to prevent a reversal of the judgment under review.' " *Duracote Corp. v. Goodyear Tire & Rubber Co.* (1983), 2 Ohio St.3d 160, 163, 2 OBR 704, 706, 443 N.E.2d 184, 187, quoting *Parton v. Weilnau* (1959), 169 Ohio St. 145, 8 O.O.2d 134, 158 N.E.2d 719, paragraph seven of the syllabus.

As this court is affirming the decisions from which appellant appeals, we will not pass upon the alternate arguments in support of such decisions.

*Judgment affirmed.*

NAHRA and JOHN V. CORRIGAN, JJ., concur.

JOHN V. CORRIGAN, J., retired, of the Eighth Appellate District, sitting by assignment.