[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 344.]

HAYNES ET AL., APPELLANTS, *v*. CITY OF FRANKLIN ET AL., APPELLEES.

[Cite as *Haynes v. Franklin*, 2002-Ohio-2334.]

*Municipal corporations—Streets and highways—Nuisance—Political subdivision*
*tort liability—Edge drop at the berm of a road—Two-pronged test used to*
*determine whether a condition in the right-of-way of a road should be*
*deemed a nuisance for purposes of R.C. 2744.02(B)(3).*

(Nos. 2000-2004 and 2000-2141—Submitted December 12, 2001—Decided May
29, 2002.)

APPEAL from and CERTIFIED by the Court of Appeals for Warren County, No.
CA2000-03-025.

_____

**MOYER, C.J.**

{¶1} Appellant Herbert Haynes was injured when an eighteen-wheel dump truck tractor-trailer rig he was driving left the road and collided with a tree. He and his wife initiated this action by filing a complaint alleging that he had been injured due to the negligence of the appellee city of Franklin. Haynes asserted that his injuries were "a direct and proximate result of the City of Franklin's violation of Revised Code Section 2744.02" in that a roadway upon which he was traveling on November 3, 1994, was not free of nuisance.

{¶2} Haynes alleged that the city had contracted with a road paving contractor to repair and resurface Trenton-Franklin Road in Franklin during the summer of 1994, and that the addition of new paving materials resulted in edge drop-offs of up to seven inches from the traversed surface to the adjacent berm. He asserted that he was driving through the construction area when the right front tire of his rig went off the right edge of the roadway. In attempting to steer to the left to return all wheels of the truck to the paved surface, Haynes lost control of his vehicle, which then crossed the road and struck a tree on the opposite side. Haynes further alleged that the city had failed to

erect adequate signage and barricades through the repaved area. The city answered and asserted the defense of political subdivision immunity pursuant to R.C. Chapter 2744.

{¶3} During discovery, the city represented that it had determined that the city itself, rather than the contractor, would finish the construction project by constructing berms adjacent to the repaved roadway. It further admitted that the berming phase of the project had begun before the Haynes accident, although berming had not yet been done in the area where Haynes's accident occurred.

{¶4} The city moved for summary judgment in its favor, which the trial court initially denied. However, the court reconsidered the city's motion following the decision of the Twelfth District Court of Appeals in *Stevens v. Ackman* (Dec. 20, 1999), Butler App. No. CA99-03-053, 1999 WL 1255806,[1] and entered judgment for the city based on a finding of immunity.

{¶5} The court of appeals, in a split decision, affirmed, concluding that an "edge drop between the paved road and the berm does not amount to a nuisance as that term has been defined by the Supreme Court of Ohio, and the city is immune from liability for any injuries caused by alleged defects in the road created as a result of the repaving."

{¶6} The court thereafter certified a conflict to this court, finding that its decision conflicted with that of the Fifth District in *Thompson v. Muskingum Cty. Bd. of Commrs*. (Nov. 12, 1998), Muskingum App. No. CT98-0010, 1998 WL 817826, on the question "whether an edge drop on the berm of a county or city road, in and of itself, constitutes a nuisance within the meaning of R.C. 2744.02(B)(3)?"

{¶7} The case is now before this court upon our determination that a conflict exists (case No. 2000-2141) and upon the allowance of a discretionary appeal (case

---

1. The judgment in *Stevens* was reversed by this court in *Stevens v. Ackman* (2001), 91 Ohio St.3d 182, 743 N.E.2d 901, on unrelated grounds.

No. 2000-2004). 91 Ohio St.3d 1477, 744 N.E.2d 774, and 91 Ohio St.3d 1478, 744 N.E.2d 775.

{¶8} We concur in the judgment of the court of appeals that the trial court properly granted summary judgment in favor of the city based on the political subdivision immunity provided by R.C. Chapter 2744. We respond to the issue certified to us by clarifying that an edge drop on the berm of a county or city road does not, in and of itself, constitute a nuisance within the meaning of R.C. 2744.02(B)(3). We recognize, however, that circumstances may exist in which a defect in the berm arising after the design and completion of construction of a roadway, including a defect creating an edge drop between the pavement and the adjoining berm, would fall within the definition of "nuisance" as used in R.C. 2744.02(B)(3). In such a circumstance, the political subdivision could fit within the exception to immunity provided by R.C. 2744.02(B)(3), assuming that the political subdivision had actual or constructive notice of the existence of that nuisance, and that it could not establish any of the defenses provided by R.C. 2744.03.[2]

{¶9} The Political Subdivision Tort Liability Act is codified in R.C. Chapter 2744 and was enacted in response to the judicial abolishment of the common-law doctrine of sovereign immunity for municipal corporations in *Haverlack v. Portage Homes, Inc*. (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749, and *Enghauser Mfg. Co. v. Eriksson Eng. Ltd.* (1983), 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228. See *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 347, 632 N.E.2d 502. The Act established statutory tort immunity in some cases

---

2. R.C. 2744.03 also establishes additional defenses for political subdivisions, including so-called "discretion defenses." *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 347, 632 N.E.2d 502. R.C. 2744.03(A)(5), for example, provides, "The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

in which political subdivisions, including cities, may otherwise be sued in negligence. See id.

{¶10} Within that statutory framework, R.C. 2744.02(A)(1) establishes a general grant of sovereign immunity by providing that a political subdivision is not liable for damages for injury, death, or loss to persons or property incurred in connection with the performance of a governmental or proprietary function of the political subdivision. The term "governmental functions" specifically includes "the maintenance and repair" of roads. R.C. 2744.01(C)(2)(e). However, R.C. 2744.02(B) lists several exceptions to the general grant of sovereign immunity. At issue in this case, as in *Franks*, is R.C. 2744.02(B)(3), which provides that political subdivisions are liable for injury caused "by their failure to keep public roads, highways, [and] streets * * * within the political subdivisions open, in repair, and free from nuisance * * *."

{¶11} This court first interpreted R.C. 2744.03(B)(3) in *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Road Comm.* (1992), 63 Ohio St.3d 318, 587 N.E.2d 819. In that case we determined that a township's duty under R.C. 2744.02(B)(3) to keep the road free from nuisance included the responsibility of ensuring that corn growing in the right-of-way of a township road did not obstruct a driver's view of cross-traffic at intersections. Because we had no precedent interpreting the term "nuisance" as used in R.C. 2744.02(B)(3), we considered prior case law interpreting an analogous statute, R.C. 723.01,[3] which imposes an affirmative duty upon municipalities to keep their roads free from nuisance.

---

3.    {¶a}    R.C. 723.01 provides:

{¶b}    "Municipal corporations shall have special power to regulate the use of the streets. Except as provided in section 5501.49 of the Revised Code, the legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be kept open, in repair, and free from nuisance."

{¶12} After construing the case law interpreting R.C. 723.01, we held in *Manufacturer's* that a "permanent obstruction to visibility, within the highway right-of-way, which renders the regularly travelled portions of the highway unsafe for the usual and ordinary course of travel, can be a nuisance for which a political subdivision may be liable under R.C. 2744.02(B)(3)." Id. at paragraph one of the syllabus. In support of that proposition, we reasoned that a political subdivision's duty under R.C. 2744.02(B)(3) "extends to conditions in the right-of-way that directly affect the highway's safety for the regular and ordinary course of traffic." Id. at 321-322, 587 N.E.2d 819. We further observed that in determining a political subdivision's duty to keep a road free from nuisance, whether under R.C. 2744.02(B)(3) (all political subdivisions) or 723.01 (municipalities), the focus should be on "whether a condition exists within the political subdivision's control that creates a danger for ordinary traffic on the regularly travelled portion of the road." Id. at 322, 587 N.E.2d 819.

{¶13} Significantly for purposes of the case at bar, the court in *Manufacturer's* turned to R.C. 4511.01(UU)(2), which defines "right-of-way" as including "the roadway, shoulders or berm, ditch, and slopes extending to the right-of-way limits under the control of the state or local authority." Id. at 322, 587 N.E.2d 819. We observed that "[t]he roadway, the space immediately above the roadway, the shoulder, *the berm*, and the right-of-way are all under the control of the political subdivision." (Emphasis added.) Id. We held that a political subdivision has a "duty to keep the areas within its control free from nuisance, *i.e.*, conditions that directly jeopardize the safety of traffic on the highway." Id.

{¶14} In subsequent cases the critical inquiry established in *Manufacturer's* has remained "whether a condition exists within the political subdivision's control that creates a danger for ordinary traffic on the regularly travelled portion of the road." 63 Ohio St.3d at 322, 587 N.E.2d 819. Most recently, in *Harp v. Cleveland Hts.* (2000), 87 Ohio St.3d 506, 721 N.E.2d 1020,

we reviewed the principles established in *Manufacturer's* and *Franks* and reaffirmed the *Manufacturer's* rejection of the view that "liability under R.C. 723.01 or 2744.02(B)(3) is limited to physical conditions in the roadway itself and does not extend to adjacent property." *Harp*, 87 Ohio St.3d at 511, 721 N.E.2d 1020. See, also, id. at 515, 721 N.E.2d 1020 (Cook, J., dissenting).

{¶15} In *Harp* the court rejected the city's argument that it was entitled to immunity under R.C. Chapter 2744 based solely upon the fact that a tree limb that fell upon a highway had not physically obstructed or impeded the flow or visibility of traffic until it fell. That is, in *Harp* we held that a condition external to the roadway could create a danger to the traveling public on the highway.

{¶16} In the same way, an edge drop or similar condition may indeed constitute an actionable danger to persons operating their vehicles in a reasonable manner on the highway. Accord *Dickerhoof v. Canton* (1983), 6 Ohio St.3d 128, 6 OBR 186, 451 N.E.2d 1193 (rider killed when motorcycle struck pothole in road's shoulder). Indeed, such a circumstance appears to have occurred in *Thompson v. Muskingum Cty. Bd. of Commrs.* (Nov. 12, 1998), Muskingum App. No. CT98-0010, 1998 WL 817826, which the certifying court of appeals herein identified as being in conflict with its judgment in the case at bar. In *Thompson*, a UPS driver was forced to maneuver his vehicle onto the berm in order to avoid a collision when another motorist crossed the center yellow line. As in the case at bar, the left tires of the delivery truck remained on the paved portion of the road while the right tires moved on the berm. The berm dropped off six to eight inches from the level of the road. The driver lost control of the van in attempting to maneuver the vehicle back onto the road. In *Thompson* the court of appeals determined that the drop-off may have constituted a nuisance, that the driver may well have acted reasonably, and that the trial court erred in entering summary judgment for the county.

**{¶17}** A finding that a genuine issue of fact exists as to whether any particular edge drop constitutes a "danger for ordinary traffic on the regularly travelled portion of the road" under *Manufacturer's*, 63 Ohio St.3d at 322, 587 N.E.2d 819, is not, by itself, determinative of whether that edge drop constitutes a "nuisance" for purposes of R.C. 2744.02(B)(3). In *Franks*, we expressly declined to expand the definition of that term to embrace *design and construction defects,* which "simply do not constitute a nuisance" even if those defects result in a dangerous condition. Id., 69 Ohio St.3d at 349-350, 632 N.E.2d 502. Accordingly, while a failure to maintain a traffic control device that is already in place, such as allowing a reflectorized sign to lose its capacity to reflect, may constitute a breach of duty to keep roads "free from nuisance," the initial decision to post, or not to post, a sign is discretionary and therefore protected by immunity under the Act. Id. at 348-349, 632 N.E.2d 502.

**{¶18}** Thus, read in harmony, *Manufacturer's* and *Franks* establish a two-pronged test to determine whether a condition in the right-of-way of a road should be deemed a nuisance for purposes of R.C. 2744.02(B)(3). To withstand a motion for summary judgment, the plaintiff must satisfy the first prong of the test by establishing that the condition alleged to constitute a nuisance creates a danger for ordinary traffic on the regularly travelled portion of the road. To satisfy the second prong of the test the plaintiff must establish that the *cause* of the condition was other than a decision regarding design and construction. If the dangerous condition is the result of negligent design or construction decisions, the condition does not constitute a nuisance, and immunity attaches. Both prongs of this test require the resolution of issues of fact.

**{¶19}** In short, no bright-line test can be stated as to whether an edge drop on the berm of a county or city road constitutes a nuisance within the meaning of R.C. 2744.02(B)(3). An edge drop may constitute a nuisance for purposes of that statute where the drop resulted from a failure to maintain a preexisting shoulder or

berm; where the particular edge drop is found, in light of all the surrounding facts and circumstances, to render the regularly travelled portions of the highway unsafe for the usual and ordinary course of travel; and where the political subdivision has failed to correct the defect upon being charged with actual or constructive notice of its existence. If, however, a dangerous edge drop is the result of design or construction, it is under our precedent and, by definition, not a nuisance within the scope of R.C. 2744.02(B)(3).

{¶20} Haynes produced no evidence to raise any genuine issue of fact to rebut the city's contention that the edge drop here at issue was the result of the implementation of a discretionary design plan. Thus, alleged negligence in that plan is protected by the general grant of immunity provided by R.C. 2744.01(A)(1). Specifically Haynes asserts, in effect, that the plan for constructing the berm separately from the repaving contract was defective, and that the city was negligent in determining the order in which it addressed the berming process. This is a challenge to the design of the repaving project, which falls within the scope of immunity provided by R.C. Chapter 2744.

{¶21} On the facts before it the trial court correctly granted summary judgment to the city of Franklin because the facts demonstrated that the edge drop complained of was incident to the design and construction of the road improvement the city had determined, in its discretion, to implement. Summary judgment in favor of the city was appropriate because the plaintiff did not establish any genuine issue of fact otherwise.

Judgment affirmed.

RESNICK and F.E. SWEENEY, JJ., concur.
LUNDBERG STRATTON, J., concurs in part.
DOUGLAS, PFEIFER and COOK, JJ., dissent.
PFEIFER, J., dissents.

_____

8

**LUNDBERG STRATTON, J., concurring in part.**

{¶22} I concur in the judgment reached by the majority, but I do so for different reasons. I agree with the majority's holding that an edge drop on the berm of a county or city road does not, in and of itself, constitute a nuisance within the meaning of R.C. 2744.02(B)(3). However, I respectfully disagree with the majority's conclusion that circumstances may exist in which a defect in the berm arising after the design and completion of construction of a roadway, including a defect creating an edge drop between the pavement and the adjoining berm, would fall within the definition of "nuisance" as used in R.C. 2744.02(B)(3). Instead, I would hold that an edge drop cannot, as a matter of law, constitute a nuisance because it is not on the regularly travelled portion of the roadway.

{¶23} R.C. 2744.02(B)(3) provides that political subdivisions are liable for injury caused "by their failure to keep public roads, highways, [and] streets * * * within the political subdivisions open, in repair, and free from nuisance." R.C. 723.01 provides that municipal corporations shall keep roadways "open, in repair, and free from nuisance."

{¶24} In *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Rd. Comm.* (1992), 63 Ohio St.3d 318, 587 N.E.2d 819, this court held that in determining a political subdivision's duty to keep a road free from nuisance, whether under R.C. 2744.02(B)(3) or 723.01, the pertinent question is "whether a condition exists within the political subdivision's control that creates a danger for ordinary traffic on the regularly travelled portion of the road." Id. at 322, 587 N.E.2d 819.

{¶25} In *Manufacturer's*, we concluded that a permanent obstruction to visibility in a right of way, which renders the regularly travelled portion of the highway unsafe for usual and ordinary course of travel, can be a nuisance for which a political subdivision may be liable under R.C. 2744.02(B)(3). Id. at paragraph one of the syllabus. The court noted that the relevant focus is on the *effect* of the obstruction on highway safety, not the *nature* of the obstruction. Id. at 323, 587 N.E.2d 819. I

would find that unlike the cornfield in *Manufacturer's* that grew in the right-of-way and blocked visibility for motorists who were traveling on a regularly travelled portion of the highway, the edge drop in this case is not a part of the roadway.

{¶26} The majority cites language from *Manufacturer's,* turning to R.C. 4511.01(UU)(2), which defines "right-of-way" as including "the roadway, shoulders or berm, ditch, and slopes extending to the right-of-way limits under the control of the state or local authority." Id. at 322, 587 N.E.2d 819. The majority goes on to cite the observation from *Manufacturer's* that "[t]he roadway, the space immediately above the roadway, the shoulder, *the berm*, and the right-of-way are all under the control of the political subdivision," which has a "duty to keep the areas within its control free from nuisance, *i.e.*, conditions that directly jeopardize the safety of traffic on the highway." (Emphasis added.) Id.

{¶27} I, however, agree with the dissent in *Manufacturer's,* which points out that "[a]lthough not defined in R.C. Chapter 2744, the terms 'highway' and 'street' * * * are defined in R.C. 4511.01(BB) as 'the entire width within the boundary lines of every way open to the use of the public as a thoroughfare for purposes of vehicular travel.' " Id. at 324, 587 N.E.2d 819 (Moyer, C.J., dissenting). The present case involves an edge drop, not a right-of-way. An edge drop exists *off* the regularly travelled portion of the roadway. It does not constitute a nuisance *in* the roadway. Because an edge drop does not create a danger for ordinary traffic *on the regularly travelled portion of the road*, the condition itself cannot constitute a nuisance as a matter of law.

{¶28} Moreover, I would cite with approval *Valescu v. Cleveland Metroparks Sys.* (1993), 90 Ohio App.3d 516, 630 N.E.2d 1. In *Valescu*, the Eighth District Court of Appeals considered a similar situation where the level of the pavement was six inches higher than the level of the shoulder of the road. Citing *Manufacturer's*, the *Valescu* court held that reasonable minds could come to but one conclusion upon the evidence submitted: "The decision to leave the berm and the gravel at different levels

10

and the failure to replace the worn chip and seal layer on the berm were not nuisances which rendered the regularly travelled portion of the road unsafe for the usual and ordinary course of travel. Sovereign immunity exists to prevent liability from attaching where the nuisance does not render the road unsafe for normal travel and the judgment of the political subdivision as to the condition of the road cannot be challenged as exercised with malicious purpose, in bad faith, or in a wanton or reckless manner. Because the condition of the road did not render it unsafe for normal travel, no evidence was presented to support the assertion that [the political subdivision] exercised its judgment with malicious purpose, in bad faith, or in a wanton or reckless manner." Id., 90 Ohio App.3d at 521-522, 630 N.E.2d 1.

{¶29} Today, the majority places governments at all levels at risk for unknown liability through an extension of the law that is best left to the General Assembly. Accordingly, I concur in the judgment of the majority, but disagree with its analysis.

_____

**PFEIFER, J., dissenting.**

{¶30} I dissent for several reasons. First, I dissent because R.C. Chapter 2744, to the extent that it grants immunity to political subdivisions, is unconstitutional. *Garrett v. Sandusky* (1994), 68 Ohio St.3d 139, 141-144, 624 N.E.2d 704, 706-708 (Pfeifer, J., concurring).

{¶31} Second, this case illustrates the absurdity of the legal fictions propping up sovereign immunity. The General Assembly has allowed political subdivisions to be held liable for injuries caused "by their failure to keep public roads, highways, [and] streets * * * within the political subdivisions open, in repair, and free from nuisance." R.C. 2744.02(B)(3). All well and good, until the political subdivision asserts the defense offered by children everywhere when they take an embarrassing tumble: "I meant to do that." The majority asserts that as long as the political subdivision *planned* a dangerous edge drop, then the drop is not a nuisance. If the same drop occurs by negligence of installation, then the drop is a nuisance.

The political subdivision is protected when it plans a potential harm, but not protected when the harm occurs accidentally. The archaic monarchical notion upon which sovereign immunity is based—"The King can do no wrong"—has been absurdly revised to "The King can do no wrong as long as he has planned to do wrong."

{¶32} Finally, I join the dissent of Justice Cook. At the very least, there is a question of fact as to whether the city's implementation of its plan created a nuisance for which it could be liable under any reading of the sovereign immunity statute.

_____

**COOK, J., dissenting.**

{¶33} When analyzing whether a roadway condition is a "nuisance" within the meaning of R.C. 2744.02(B)(3), the touchstone of our analysis is whether the condition "creates a danger for ordinary traffic on the regularly travelled portion of the road." *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Rd. Comm.* (1992), 63 Ohio St.3d 318, 322, 587 N.E.2d 819. At this stage of the proceedings, there remains a genuine issue of fact as to whether the edge drop in this case fits this definition, thereby constituting a nuisance for which the city of Franklin could be liable. Cf. *Dickerhoof v. Canton* (1983), 6 Ohio St.3d 128, 130, 6 OBR 186, 451 N.E.2d 1193 ("It is for the trier of fact to determine whether swerving to avoid a collision with an object in the highway and driving on the shoulder is a foreseeable and reasonable use of the shoulder. If so, a municipal corporation could be liable under R.C. 723.01 for failure to keep the shoulder in repair and free from nuisance, including a chuckhole, rendering the highway unsafe for travel.").

{¶34} Despite the existence of a genuine fact issue concerning the dangerous nature of the edge drop in this case, the majority affirms summary judgment in the city's favor because, in its view, the edge drop resulted from the city's *design* of the road repaving project. See *Franks v. Lopez* (1994), 69 Ohio

St.3d 345, 349, 632 N.E.2d 502 (declining to "expand" definition of nuisance to include "design and construction defects or the failure to erect signage"). In other words, the majority interprets *Franks* as immunizing a city from liability for *designing* a roadway to include a dangerous condition that the city could be liable for *maintaining* under R.C. 2744.02(B)(3). Even assuming that this is a proper reading of *Franks*, summary judgment remains unwarranted in this case. The majority itself rests the propriety of summary judgment on the notion that the edge drop resulted from "the *implementation* of a discretionary design plan." (Emphasis added.) But if the city's fault (if any) lies in the implementation of the design plan, the immunity defense is not available. As *Franks* counsels, once a political subdivision has made a discretionary decision, "the implementation of that decision is not immune from liability." Id. See, also, *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 285, 525 N.E.2d 808. The city was not at liberty to implement its design plan in a manner that resulted in a nuisance.

{¶35} I respectfully dissent.

DOUGLAS and PFEIFER, JJ., concur in the foregoing dissenting opinion.

_____

Casper & Casper and Patrick W. Allen, for appellants.

James W. Gustin, for appellee.

Isaac, Brant, Ledman & Teetor, L.L.P, Mark Landes, Paul A. MacKenzie and John S. Higgins, urging affirmance for amicus curiae County Commissioners' Association of Ohio.

Barry M. Byron, Stephen L. Byron and John E. Gotherman, urging affirmance for amicus curiae Ohio Municipal League.

_____