OPINION
{¶ 1} This case is before us on the appeal of Ashley, June, and Robert Supensky from a trial court decision granting summary judgment to the City of Oakwood (Oakwood). In support of the appeal, the Supenskys claim in a single assignment of error that "[t]he trial court committed reversible error by granting summary judgment in favor of the City of Oakwood by finding the City of Oakwood was immune to all Appellant's claims pursuant to Ohio Revised Code 2744.10, et. seq."
 {¶ 2} After reviewing the facts and applicable law, we find the assignment of error without merit. Accordingly, the judgment of the trial court will be affirmed.
 I {¶ 3} The pertinent facts in the present case are undisputed. On August 6, 2000, Ashley Supensky was fifteen years of age. On that day, Ashley was walking back from the Dairy Queen in Oakwood, Ohio, with friends. Ashley and her friends were in a really good mood, and were goofing around a bit. As the girls approached a stop sign at the corner of Greenmount Boulevard and Delaine Avenue, Ashley grabbed the stop sign and swung around it. Ashley's actions were done out of an impulse to have fun. When Ashley swung around the pole, it broke and fell on her leg, causing an injury that required surgery. The sign was not unusual in appearance and Ashley did not see any rust. The sign was located in the green space between the sidewalk and street and was not impeding Ashley from walking.
 {¶ 4} Ashley's friend, Tricia Rau, who observed the accident, testified that the pole had rust where it broke. Rau also stated that the pole had more than one coat of paint. An affidavit from a metallurgical expert also indicated that the pole had visible rust on it before it broke.
 {¶ 5} Oakwood had never received any calls or requests for maintenance on the stop sign or pole. Oakwood's policy and practice was to daily inspect signs throughout the city. If an employee saw rust on a pole, he would thoroughly inspect the pole and make necessary repairs. In addition, since at least 1982, Oakwood's practice has been to paint stop sign poles every four or five years. At the time the poles are painted, they are also inspected. In 1996 and 1997, Oakwood undertook a city-wide project to replace street signs. At that time, Oakwood replaced all stop signs and painted all the poles, but did not replace the poles. The poles would have been checked when they were painted, and Oakwood would have replaced any poles that were found to be defective. If a pole simply had surface rust, the pole would have been sanded, primed, and painted.
 {¶ 6} Oakwood did not keep records regarding when various stop signs were put on the ground, and there is no information as to the age of the post in question. Oakwood also did not keep records of its own observations and repairs on signs. However, if a citizen reported a complaint, a work order for the repair would be made.
 {¶ 7} As we mentioned, the trial court found that Oakwood was immune from suit. In rejecting the Supenskys' claim that the pole was a nuisance for purposes of the immunity exception in R.C. 2744.02(B)(3), the trial court relied on the fact that the pole would not have fallen absent Ashley's actions. Based on this fact, the court concluded that the pole was not a nuisance.
 {¶ 8} We review summary judgment decision de novo, which means that "we apply the standards used by the trial court." Brinkman v. Doughty
(2000),140 Ohio App.3d 494, 496, 748 N.E.2d 116. Summary judgment is appropriately granted where the trial court finds: "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor."Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66,375 N.E.2d 46.
 {¶ 9} To decide if political subdivisions are immune from liability under R.C. Chap. 2744, courts use a three-tiered analysis. The first tier:
 {¶ 10} "is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. * * * However, that immunity is not absolute. * * *
 {¶ 11} "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. * * *
 {¶ 12} "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." Colbertv. Cleveland, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, at ¶s 7-9.
 {¶ 13} The parties in this case agree that maintaining street signs is a governmental function. They also agree that an exception to immunity generally exists under R.C. 2744.02(B)(3), which makes political subdivisions liable:
 {¶ 14} "for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance * * *."
 {¶ 15} The Supenskys also rely on R.C. 723.01, which requires municipalities to keep public highways, streets, sidewalks, and other public property "open, in repair, and free from nuisance." In Haynes v.Franklin, 95 Ohio St.3d 344, 2002-Ohio-2334, 767 N.E.2d 1146, the Ohio Supreme Court noted that:
 {¶ 16} "in determining a political subdivision's duty to keep a road free from nuisance, whether under R.C. 2744.02(B)(3) (all political subdivisions) or 723.01 (municipalities), the focus should be on `whether a condition exists within the political subdivision's control that creates a danger for ordinary traffic on the regularly travelled portion of the road.'" 2002-Ohio-2334, at ¶ 12.
 {¶ 17} In Hughes, the Ohio Supreme Court interpreted its prior decisions as having established:
 {¶ 18} "a two-pronged test to determine whether a condition in the right-ofway of a road should be deemed a nuisance for purposes of R.C.2744.02(B)(3). To withstand a motion for summary judgment, the plaintiff must satisfy the first prong of the test by establishing that the condition alleged to constitute a nuisance creates a danger for ordinary traffic on the regularly traveled portion of the road. To satisfy the second prong of the test the plaintiff must establish that the cause of the condition was other than a decision regarding design and construction. If the dangerous condition is the result of negligent design or construction decisions, the condition does not constitute a nuisance, and immunity attaches." Id. at ¶ 18.
 {¶ 19} Similarly, the Ohio Supreme Court said in Joseph v. City ofPortsmouth (1975), 44 Ohio St.2d 155, 157, 339 N.E.2d 622, that "liability under R.C. 723.01 `is not imposed upon a municipality where the condition in question does not render a street unsafe for usual and ordinary modes of travel.'" (Citation omitted).
 {¶ 20} Implicit in the trial court's decision is that swinging on stop signs is not usual and customary, nor can it be considered "ordinary traffic." We agree with this assessment. Cases in which liability is found typically involve situations where an individual is injured by an obstruction or defect in the highway or treelawn. For example, inHaynes, the plaintiff challenged an edge drop-off between the traveled portion of the highway and the berm that caused him to lose control of his vehicle. 2002-Ohio-2334, at ¶ 2. Even under that circumstance, the court held that the city was immune because the road drop-off was a design choice that the city had decided, in its discretion, to implement. Id. at 21. However, the court could have found triable issues if the decision was not a product of design considerations.
 {¶ 21} Likewise, the Ohio Supreme Court found triable issues of fact in Joseph where the plaintiff was walking on a grassy area and tripped over an iron stake that was protruding from the ground, but was obscured from view. 44 Ohio St.3d at 155. The court has also found liability where a permanent obstruction to visibility, within a highway right of way, makes regularly traveled parts of the highway "unsafe for the usual and ordinary course of travel." Manufacturer's Natl. Bank of Detroit v. ErieCty. Road Comm (1992), 63 Ohio St.3d 318, 587 N.E.2d 819, 821. In that particular instance, a cornfield blocked visibility on the roadway, Id.
 {¶ 22} In claiming that Oakwood should be held liable, the Supenskys rely on Hubler v. Dayton (1938), 26 Ohio Law Abs. 679, 1938 WL 6705, in which this court indicated that it could not say, as a matter of law, that a pedestrian crossing a treelawn was not using it in the customary and usual mode of travel. 1938 WL 6705, at *3. However, the facts inHubler are quite unlike those of the present case. Specifically, the pedestrian in Hubler was walking across a treelawn or park strip and tripped over a broken piece of tile that was imbedded in the ground and was largely hidden from view by grass. Id. at *4.
 {¶ 23} The Supenskys also rely on the testimony of Ashley's friend, Tricia Rau, who stated in an affidavit that Ashley was doing nothing unexpected or "unordinary." However, the appropriate focus is not on the opinion of teenagers as to what is customary or expected. Beyond dispute, swinging on a stop sign is not the usual and ordinary course of travel, even when one is walking on a grassy area between the sidewalk and the road.
 {¶ 24} As a additional matter, the Supenskys argue that we should consider the effect of the obstruction on highway safety, not the nature of the particular obstruction. In support of this point, the Supenskys rely on Harp v. Cleveland Hts., 87 Ohio St.3d 506, 2000-Ohio-467,721 N.E.2d 1020. In Harp, the Ohio Supreme Court did make such an observation. However, the court was addressing the issue of whether liability under R.C. 2744.02(B)(3) and R.C. 723.01 is limited to objects in the roadway or can be extended to objects adjacent to the roadway.87 Ohio St.3d at 511. In reviewing prior cases, the court commented that the focus:
 {¶ 25} "`should be on whether a condition exists within the political subdivision's control that creates a danger for ordinary traffic on the regularly travelled portion of the road.' Applying this analysis to a cornfield growing within the highway right-of-way, we reasoned that `[a] visibility obstruction can be as hazardous to the highway's safety as a malfunctioning traffic light, a pothole in the roadway, or a rut in shoulder. * * * The relevant focus is on the effect of the obstruction on the highway's safety, not on the nature of the particular obstruction.'" Id. (Citations omitted).
 {¶ 26} The obstruction of highway safety in Harp was a tree limb that fell and struck a motor vehicle. The tree limb was located on city property adjacent to the highway. Id. at 506. Again, this differs from the present case. As the trial court in this case noted, the plaintiffs "provided the Court with no evidence whatsoever that absent the actions of Ms. Supensky, the stop sign pole would have fallen over on its own."
 {¶ 27} Finally, we note that Oakwood has argued that it did not have either actual or constructive notice of the alleged defect. We need not address this point, since the undisputed facts do not demonstrate that a nuisance existed.
 {¶ 28} Based on the preceding discussion, the single assignment of error is overruled and the judgment of the trial court is affirmed.
Wolff, J., and Young, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).