DECISION AND JUDGMENT ENTRY
{¶ 1} Deborah Engle appeals a judgment of the Meigs County Court of Common Pleas granting summary judgment in favor of several governmental entities and elected officials. Mrs. Engle argues the court erred in concluding Meigs County and its commissioners were immune from liability. Additionally, she argues the court erred in concluding the county and its commissioners had no duty to maintain and repair Shady Cove Road. Because Shady Cove Road is a township road, the county and its commissioners had no duty to keep it open, in repair, and free from nuisance. Moreover, because Mrs. Engle has failed to offer evidence indicating that the county and its commissioners performed maintenance and repair work on Shady Cove Road in the past, no rational trier of fact could find that they assumed that duty. Mrs. Engle also argues the court erred in concluding Salisbury Township and its trustees were immune from liability. Additionally, she argues the court erred in concluding there was no causal connection between her husband's death and the township and trustees' failure to maintain Shady Cove Road. Assuming, without deciding, that the township and its trustees are not immune from liability, we conclude no reasonable trier of fact could find that their failure to maintain Shady Cove Road was the proximate cause of Mr. Engle's death. Accordingly, we affirm summary judgment in favor of the appellees.
 {¶ 2} Woodrow and Deborah Engle married in 1974. Two years later, they moved into a house located at 38478 Shady Cove Road in Salisbury Township, Meigs County, Ohio. Their house is located next to that of Mr. Engle's mother, Julia, who lives at the end of Shady Cove Road.
 {¶ 3} Shady Cove Road is a gravel road that runs roughly east to west. The Engles' property is bordered by Shady Cove Road in the front and Leading Creek in the rear. To the east of the Engles' property, Leading Creek borders and runs parallel to Shady Cove Road. Ultimately, Leading Creek empties into the Ohio River, which contains locks and dams to regulate water flow along the river. When the locks and dams along the river are closed, water can back up into Leading Creek and flood the eastern portion of Shady Cove Road. This occurs periodically throughout the spring and fall and often, the road will remain flooded for days. By varying accounts, the floodwaters can reach heights of six to twenty feet above the road.
 {¶ 4} When Shady Cove Road flooded, the Engles either walked around the flooded portion or used a boat to reach the main road. Most of the time, the Engles walked to the main road. However, walking required them to follow a difficult path along a hillside covered with trees and brush.
 {¶ 5} In the late 1980's, Mrs. Engle began voicing her concerns about the flooding to local, county, and state officials. She also attended meetings of the township trustees and county commissioners to ask for help with the flooding problem. Mrs. Engle wanted the township to raise Shady Cove Road above flood level. However, such a project was not economically feasible given the township's annual budget. Unhappy with the trustees' response, Mrs. Engle wrote letters to the editor of the local newspaper criticizing the manner in which the trustees handled the flooding problem.
 {¶ 6} When the Engles first moved to Shady Cove Road, the township maintained the road. The township would spread gravel on the road, grade the road, and plow the road when necessary. However, in the early 1990's, the township stopped maintaining the portion of Shady Cove Road running between the Engles' house and Julia Engle's house. Mrs. Engle claims the township stopped maintaining the road in front of her house because of her complaints about the flooding. The township, however, claims that they stopped maintaining that portion of the road because "the state mileage man" removed it from the official mileage list. When the township stopped maintaining the road in front of his house, Mr. Engle took it upon himself to keep it maintained and in repair.
 {¶ 7} This background information leads us to the tragic events surrounding Mr. Engle's death. On February 20, 2000, floodwaters from Leading Creek covered the eastern portion of Shady Cove Road. The day before, a hard rain had created a rut in the road between the Engles' house and Julia Engle's house. Mr. Engle wanted to fix the rut but to do so he needed to use his tractor, which was out of fuel. Since Shady Cove Road was flooded, Mr. Engle called his son and asked him to pick up the fuel and meet him at the main road. Mr. Engle then borrowed his neighbor's boat so he could meet his son.
 {¶ 8} On this particular day, the floodwaters on Shady Cove Road were approximately twenty feet above the road. As Mr. Engle approached the shoreline where his son was waiting, the boat capsized and Mr. Engle, who was not wearing a life jacket, fell into the water. Although the son jumped into the water in an effort to help his father, he was unable to save him. Tragically, Mr. Engle drowned.
 {¶ 9} In February 2002, the probate court appointed Mrs. Engle executor of her husband's estate. That same month, Mrs. Engle filed a wrongful death action against (1) Salisbury Township; (2) Salisbury Township Trustees Ted Warner, Edward Durst, Bill Spaun, Nathan Biggs, and Harold Brinker, individually and in their official capacity; (3) Meigs County; (4) Meigs County Commissioners Michael Davenport, Jeffrey Thornton, and Janet Howard Tackett, individually and in their official capacity; and (5) the State of Ohio, which was subsequently dismissed as a party for lack of jurisdiction. Mrs. Engle alleged the failure of the township and county to keep Shady Cove Road open, in repair, and free from nuisance was the proximate cause of Mr. Engle's death. She also alleged that the individual trustees and commissioners acted maliciously and in bad faith by deliberately ignoring the deterioration of Shady Cove Road and by failing to maintain Shady Cove Road.
 {¶ 10} Subsequently, the Township Defendants and County Defendants filed motions for summary judgment arguing that they were immune from liability. Additionally, they argued that Mr. Engle's negligence barred Mrs. Engle's claim. In August 2003, the trial court granted summary judgment in favor of the Township and County Defendants. The court concluded the Township and County Defendants were immune from liability concerning the flooding of Shady Cove Road. The court also concluded the County Defendants had no duty to maintain Shady Cove Road. Moreover, the court found that even assuming the Township Defendants negligently failed to maintain the road and that failure caused the rut, the rut was not the proximate cause of Mr. Engle's death.
 {¶ 11} Mrs. Engle now appeals the trials court's judgment and raises the following assignments of error: "ASSIGNMENT OF ERRORNO. 1 — The trial court erred in its judgment that there are no genuine issues of material fact and that appellee, Salisbury Township, is entitled to summary judgment as a matter of law.ASSIGNMENT OF ERROR NO. 2 — The trial court erred in its judgment that there are no genuine issues of material fact and that appellee, Meigs County, is entitled to summary judgment as a matter of law. ASSIGNMENT OF ERROR NO. 3 — The trial court erred in its judgment that the individual Salisbury Township Trustees are entitled to immunity pursuant to R.C. 2744.03(A)(6) and granting of summary judgment to trustees in their individual capacity. ASSIGNMENT OF ERROR NO. 4 — The trial court erred in its judgment that the individual Meigs County Commissioners are entitled to immunity pursuant to R.C. 2744.03(A)(6) and granting summary judgment to commissioners in their individual capacity."
 {¶ 12} In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, i.e., we review the judgment independently and without deference to the trial court's determination. Midwest Specialties, Inc. v. FirestoneTire Rubber Co. (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411. Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. Bostic v. Connor (1988), 37 Ohio St.3d 144, 146,524 N.E.2d 881, citing Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46; cf., also, State exrel. Coulverson v. Ohio Adult Parole Auth. (1991),62 Ohio St.3d 12, 14, 577 N.E.2d 352; Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the moving party in requesting summary judgment. Mitseff v. Wheeler
(1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. If the moving party satisfies this burden, "the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial, and if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Kulch v.Structural Fibers, Inc., 78 Ohio St.3d 134, 145, 1997-Ohio-219,677 N.E.2d 308, citing Dresher v. Burt (1996),75 Ohio St.3d 280, 295, 662 N.E.2d 264.
 {¶ 13} Before considering the issues raised on appeal, it is necessary to address a preliminary matter. In Counts One and Three of her complaint, Mrs. Engle asserts that the township and county "failed to exercise ordinary care to keep Shady Cove Road open, in repair, and [free] from nuisance and flood, and to reduce and cure the flooding." As a result of this language, it initially appeared that Mrs. Engle was arguing the township and county breached a duty to redesign and reconstruct the road to eliminate the flooding, which is related to the road's design. Remedying the flooding problem would require redesign and reconstruction of the road. However, in her memorandum in opposition to summary judgment, and again on appeal, Mrs. Engle has clarified her argument by indicating that it focuses not on appellees' failure to eliminate the flooding but on their failure to maintain the portion of the road in front of her house. Because Mrs. Engle has expressly abandoned any argument based on appellees' failure to reconstruct the road to eliminate the flooding, we need not consider whether appellees would be liable under such a theory. We note, however, that the court correctly concluded that appellees are immune from liability arising out of their failure to reconstruct Shady Cove Road to eliminate the flooding. See Franks v. Lopez (1994), 69 Ohio St.3d 345, 349,632 N.E.2d 502 (Holding that design and construction defects to not constitute a nuisance under R.C. 2744.02[B][3]. Moreover, design and construction of roads involve discretionary functions as provided in R.C. 2744.03[A][3] and [5].)
 {¶ 14} We turn now to Mrs. Engle's argument that the failure of the township and county to maintain the road in front of her house was the proximate cause of her husband's death. She argues that if the township and county had been maintaining the road, her husband would not have been forced to maintain it himself. Although Mrs. Engle's argument ends here, it is necessary to take it one step further since Mr. Engle did not die while repairing the road. Implicitly, Mrs. Engle is arguing that if her husband had not been forced to maintain the road, he would not have been in the boat getting fuel for the tractor and would not have drowned in the floodwaters.
 {¶ 15} Before considering Mrs. Engle's argument, we review some additional facts in order to avoid any confusion that may arise otherwise. First, Shady Cove Road dead-ends into Julia Engle's property, which lies to the west of the Engles' property. Thus, the main road at the eastern end of Shady Cove Road provides the only access to Shady Cove Road. Second, although the eastern portion of Shady Cove Road floods, the portion between the Engles' property and Julia Engle's property does not. Finally, although the township stopped maintaining the portion of Shady Cove Road running between the Engle's house and Julia Engle's house, it continued to maintain the eastern portion of Shady Cove Road. With these additional facts in mind, we now consider Mrs. Engle's assignments of error.
 {¶ 16} For the sake of clarity, we will consider Mrs. Engle's arguments involving the County Defendants first. In her second and fourth assignments of error, Mrs. Engle contends the court erred by granting summary judgment in favor of the county and its commissioners. She alleges the county's failure to keep Shady Cove Road open, in repair, and free from nuisance was the proximate cause of her husband's death. As for the individual commissioners, she contends they acted maliciously and in bad faith by failing to maintain Shady Cove Road. In response, the county and its commissioners argue that they are immune from liability. The county also argues that it is not a proper party to this suit. It argues that any action against the county must be brought through the board of county commissioners. However, Mrs. Engle has filed suit against the county commissioners in their official capacity. A claim against the commissioners is, in effect, a claim against the county itself. Carpenter v. SchererMountain Ins. Agency (1999), 135 Ohio App.3d 316,733 N.E.2d 1196, fn.4.
 {¶ 17} Additionally, the commissioners argue they had no duty to maintain Shady Cove Road. Mrs. Engle, however, argues that the county and its commissioners assumed a duty to maintain Shady Cove Road by their prior actions.
 {¶ 18} Generally, political subdivisions are immune from liability for acts or omissions connected with governmental or proprietary functions. R.C. 2744.02(A)(1). However, R.C.2744.02(B) provides several exceptions to this general grant of immunity. Under R.C. 2744.02(B)(3), political subdivisions are liable for injury or death "caused by their failure to keep roads, highways, [and] streets * * * within the political subdivision open, in repair, and free from nuisance * * *."[1]
Thus, R.C. 2744.02(B)(3) imposes a duty on political subdivisions to keep the roads in their control free from conditions that create a danger for ordinary traffic on the regularly traveled portion of the road. See Manufacturer's Natl. Bank ofDetroit v. Erie Cty. (1992), 63 Ohio St.3d 318, 321,587 N.E.2d 819; Haynes v. Franklin, 95 Ohio St.3d 344, 2002-Ohio-2334,767 N.E.2d 1146, at ¶ 13. Failure to do so results in liability unless one of the defenses in R.C. 2744.03(A) applies. See R.C. 2744.02(B); 2744.03(A); Cater v. Cleveland,83 Ohio St.3d 24, 28, 1998-Ohio-421, 697 N.E.2d 610.
 {¶ 19} In addition, employees of political subdivisions are immune from liability for acts or omissions connected with governmental or proprietary functions unless (1) the employee's acts or omissions were manifestly outside the scope of the employee's employment; (2) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) civil liability is expressly imposed upon the employee by a section of the Revised Code. R.C. 2744.03(A)(6).
 {¶ 20} Mrs. Engle acknowledges that Shady Cove Road is a township road. R.C. 5535.01 divides the public highways of the state into three distinct classes: state roads, county roads, and township roads. Township roads "include all public highways other than state or county roads." R.C. 5535.01(C). Under R.C.5535.01(C), the board of township trustees must maintain all township roads. Similarly, R.C. 5571.02 requires the township trustees to keep township roads in good repair. While the board of county commissioners may assist the board of township trustees in maintaining township roads, it is not required to do so. See R.C. 5535.01(C). See, also, R.C. 5535.08(A) ("[T]he county or township, by agreement between the board of county commissioners and the board of township trustees, may contribute to the repair and maintenance of the roads under the control of the other.")
 {¶ 21} As noted, R.C. 2744.02(B)(3) imposes a duty on political subdivisions to keep roads within their control open, in repair, and free from nuisance. Because Shady Cove Road is a township road, it was the township's duty to keep the road open, in repair, and free from nuisance. The county had no duty to keep the road in repair. Moreover, the county commissioners had no duty to maintain and repair Shady Cove Road. The duty to repair and maintain township roads belongs to the township trustees. See R.C. 5535.01(C); R.C. 5571.02.
 {¶ 22} Mrs. Engle argues the county and its commissioners assumed a duty to maintain Shady Cove Road by their prior actions. She relies on the deposition testimony of Herman Roberts, Salisbury Township's maintenance man. Mr. Roberts testified that Meigs County provides Salisbury Township with patch material and culvert pipes for use in maintaining township roads. He also testified that the county provides the township with help on ditching and grader work for township roads. Finally, he testified that the county provides the township with unlimited amounts of gravel from its gravel pits for use on township roads. However, Mrs. Engle offered no evidence indicating that the county or its commissioners performed maintenance or repair work on Shady Cove Road in the past. In fact, Mr. Roberts testified that the county had never helped grade or ditch any portion of Shady Cove Road.
 {¶ 23} Absent evidence that the county or the county commissioners engaged in maintenance or repair work in the past, no reasonable trier of fact could find that the county voluntarily assumed a duty to keep Shady Cove Road open, in repair, and free from nuisance. Merely supplying materials to be used on some township roads does not result in an assumed duty to repair and maintain those roads. If it did, the county would have assumed a duty to maintain not only Shady Cove Road but also the other roads within Salisbury Township, for nothing in Mr. Roberts' testimony indicates that the materials were used solely on Shady Cove Road. The law will not create a duty to maintain and repair township roads from the simple act of supplying material to the township.
 {¶ 24} More importantly, if we were to conclude that the county and its commissioners assumed a duty to keep Shady Cove Road open, in repair, and free from nuisance, Mrs. Engle cannot establish that the breach of this duty was the proximate cause of her husband's death. See our discussion of proximate cause in connection with the Township Defendants.
 {¶ 25} Thus, the trial court did not err in granting summary judgment in favor of the county and its commissioners. Therefore, we overrule Mrs. Engle's second and fourth assignments of error.
 {¶ 26} In her first and third assignments of error, Mrs. Engle contends the trial court erred by granting summary judgment in favor of the township and its trustees. She alleges the township's failure to keep Shady Cove Road open, in repair, and free from nuisance was the proximate cause of her husband's death. As for the individual trustees, she argues the trustees acted outside the scope of their employment when they stopped maintaining the road in front of her house. She further argues that the trustees acted maliciously and in bad faith when they stopped maintaining the road in front of her house. In response, the township and trustees claim they are immune from liability. In addition, they argue that their failure to maintain the road, i.e., to repair the rut in the road, was not the proximate cause of Mr. Engle's death. Finally, they argue that Mr. Engle's negligence bars Mrs. Engle's claim. We assume, without deciding, that the township and township trustees are not immune from liability. We also assume that they had a duty to maintain the road. See our discussion of subdivision liability in connection with the County Defendants. However, we conclude Mrs. Engle has failed to demonstrate a genuine issue of fact regarding the element of proximate cause.
 {¶ 27} Negligence is without legal consequence unless the negligent act is the proximate cause of an injury. Osler v.Lorain (1986), 28 Ohio St.3d 345, 347, 504 N.E.2d 19; Harris v.Ohio Dept. of Transp. (1992), 83 Ohio App.3d 125, 131,614 N.E.2d 779. Ordinarily, proximate cause is a question of fact for the jury. See Strother v. Hutchinson (1981), 67 Ohio St.2d 282,288, 423 N.E.2d 467, citing Clinger v. Duncan (1957),166 Ohio St. 216, 141 N.E.2d 156. However, "where no facts are alleged justifying any reasonable inference that the acts or failure of the defendant constitute the proximate cause of the injury, there is nothing for the jury (to decide), and, as a matter of law, judgment must be given for the defendant." Case v. MiamiChevrolet Co. (1930), 38 Ohio App. 41, 45-46, 175 N.E.2d 224. See, also, Stibley v. Zimmerman (Aug. 26, 1998), Athens App. No. 97CA51, fn.4.
 {¶ 28} "The rule of proximate cause `requires that the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequence as under the surrounding circumstances of the particular case might, and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligence act.'" Jeffers v. Olexo (1989),43 Ohio St.3d 140, 143, 539 N.E.2d 614, quoting Ross v. Nutt
(1964), 177 Ohio St. 113, 203 N.E. 118. In addressing proximate cause, the Ohio Supreme Court has stated: "[I]n order to establish proximate cause, foreseeability must be found. * * * `If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the injury is then the proximate result of the negligence * * *.'" Mussivand v. David
(1989), 45 Ohio St.3d 314, 321, 544 N.E.2d 265, quoting Mudrichv. Standard Oil Co. (1950), 153 Ohio St. 31, 39, 90 N.E.2d 859.
 {¶ 29} Mrs. Engle contends the failure of the township and its trustees to keep the road in front of her house in repair was the proximate cause of her husband's death by drowning. It is reasonably foreseeable that one's failure to keep a portion of a road in repair would result in someone being injured while using that portion of the road. Perhaps it is even foreseeable that one's failure to keep a road in repair would result in someone being injured while performing the neglected repair work. However, no reasonably prudent person could foresee that his failure to keep one portion of a road in repair would result in someone drowning near an adjacent portion of that road. Mrs. Engle contends her husband would not have been in the boat that day if the township and its trustees had been maintaining the road. While the failure of the township and its trustees to maintain the road may be tangentially connected to Mr. Engle's death, it is not the proximate cause. Drowning in floodwaters at one end of a road is not the natural and probable consequence of a township's failure to keep the other end of the road in repair. The causal connection between Mr. Engle's death and the township and trustees' failure to keep the road in repair is far too remote as a matter of law. See Kemerer v. Antwerp Bd. of Edn.
(1995), 105 Ohio App.3d 792, 796, 664 N.E.2d 1380, quotingArmour Co. v. Ott (1927), 117 Ohio St. 252,158 N.E. 189. (Negligence is the remote cause of an injury when the injury "could not have been foreseen or reasonably anticipated as the probable result of an act of negligence.") No reasonable trier of fact could find that Mr. Engle's death was the natural and probable consequence of the township and trustees' failure to keep the road in front of the Engle's house in repair. Thus, summary judgment in favor of the township and township trustees was appropriate. Therefore, we overrule Mrs. Engle's first and third assignments of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
Kline, P.J., and Abele, J., concur in judgment and opinion.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.
[1] The current version of R.C. 2744.02(B)(3) provides that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads * * *." However, the current version did not take effect until April 2003. Because Mrs. Engle's husband drowned in February of 2000, we use the version of R.C. 2744.02(B)(3) in effect at that time.