**BALBACH, Admr., Appellant,**

**v.**

**OHIO DEPARTMENT OF TRANSPORTATION, Appellee.**

[Cite as *Balbach v. Ohio Dept. of Transp.* (1990), 67 Ohio App.3d 582.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–612.

Decided May 8, 1990.

*Richard E. Mayhall* and *Sanford H. Flack,* for appellant.

*Anthony J. Celebrezze, Jr.,* Attorney General, *Joyce B. Link* and *Sally Ann Walters,* for appellee.

RADCLIFFE, Judge.

Plaintiff-appellant ("plaintiff") appeals a final judgment rendered by the Ohio Court of Claims in favor of defendant-appellee, Ohio Department of Transportation ("ODOT"), on plaintiff's complaint alleging negligence.

Plaintiff, S. Byron Balbach, Jr., is the administrator of the estate of Carol Jean Elder and the estates of her two children, Rusty Dean Elder and Lonnie

Dwayne Elder. Plaintiff's decedents were killed around 10:00 p.m. on the night of September 28, 1984, while traveling in a westerly direction on Interstate 70 in Clark County, Ohio. The Elders were passengers in a station wagon operated by Steven Day. The accident occurred as the Day vehicle was traversing a 4.8 mile construction zone on Interstate 70.

The construction was undertaken by ODOT in June 1984 for the purpose of resurfacing Interstate 70. The resurfacing project necessitated the closing of the two eastbound lanes of Interstate 70 between June and August 1984, and then the closing of the two westbound lanes between August and October 1984. The traffic maintenance plan developed by ODOT required that traffic in the construction zone be diverted from the closed lanes to a single lane on the opposing side of the interstate. Traffic was thus maintained in two directions on one side of the interstate separated by an asphalt median strip upon which orange plastic pylons were spaced at fifty-foot intervals. This type of traffic maintenance plan, known in the industry as two-lane, two-way operation ("TLTWO"), had not been utilized in Ohio since the early 1970s. The asphalt median, initially utilized in North Carolina some time in the early 1980s, had never before been used in this state. ODOT's plans for the asphalt median specified that the median was to be four inches in height and eighteen inches wide at the base.

The accident occurred at the western terminus of the construction zone as the Day vehicle was proceeding west in the eastbound passing lane of Interstate 70. It was a clear night and the pavement was dry. Apparently, the Day vehicle swerved to the right and then to the left, crossing the asphalt median, at which point it collided head-on with a semi-tractor trailer proceeding east. All four occupants of the Day vehicle were killed immediately. The official cause of the accident was listed as "driver error."

Plaintiff filed this action on September 26, 1986, in the Ohio Court of Claims alleging negligence on the part of ODOT in failing to properly design, maintain, repair, keep open and free from nuisance Interstate 70 at the construction site. Plaintiff sought approximately $3 million in damages.

Defendant answered in January 1987 denying the allegations of plaintiff's complaint and asserted contributory negligence and assumption of the risk as specific defenses. Defendant also alleged that plaintiff's complaint failed to state a claim upon which relief could be granted. Subsequently, on January 27, 1989, ODOT moved the claims court for leave to file an amended answer to include the defense of sovereign immunity. This motion was granted on February 2, 1989, as was plaintiff's motion to strike the defense of assumption of risk. In the interim, the Clark County Court of Common Pleas caused a related suit filed by plaintiff in that court to be removed to the Court of

Claims, which case was consolidated with the case pending before the claims court. Following extensive discovery, plaintiff reached settlements with all defendants except ODOT. The matter was tried to the court between February 27 and March 3, 1989.

The claims court, by decision and judgment entry filed April 19, 1989, entered judgment in favor of ODOT and dismissed plaintiff's complaint. The claims court found that plaintiff had failed to prove by a preponderance of the evidence negligence on the part of ODOT either in the selection of the TLTWO plan or in the use of the asphalt divider. The claims court also concluded that ODOT was immune from liability with respect to its decision to utilize the asphalt median since such decision was based upon engineering judgment. The claims court concluded that the decision to use the asphalt divider was a planning function which involved a high degree of official discretion. As such, that decision was immune from liability. Finally, the Court of Claims concluded, in light of its determination that the utilization of the asphalt divider was not negligent, the sole proximate cause of the accident was Steven Day's failure to exercise reasonable care in the operation of his vehicle.

Plaintiff now appeals and sets forth the following five assignments of error:

"I. The trial court erred and abused its discretion when it permitted ODOT, over appellant's objection, to amend its answer to raise the defense of sovereign immunity.

"II. The trial court's ruling that ODOT's decision to employ the asphalt divider was protected by the doctrine of sovereign immunity is unsupported by the facts and is contrary to law.

"III. The trial court erred in not finding that ODOT was negligent for failing to use portable concrete barriers to separate the lanes of travel at the accident site as required by its own location and design manual.

"IV. The trial court erred by not finding that ODOT breached its duty of care to plaintiff's decedents by failing to use portable concrete barriers to separate traffic at the accident site because the evidence clearly demonstrated that portable concrete barriers were cost effective devices for preventing the foreseeable hazard of head-on collisions.

"V. The trial court erred in concluding that the negligence of Steven Day was the sole proximate cause of the collision that caused the deaths of plaintiff's decedents."

Under his first assignment of error, plaintiff contends that the Court of Claims abused its discretion when it permitted ODOT, over objection, to amend its answer raising the defense of sovereign immunity. Plaintiff contends that the amendment unduly prejudiced his case against ODOT since

all discovery had been completed and plaintiff had been given no opportunity to thoroughly examine its deposition witnesses with respect to this issue. Because the witness who was primarily responsible for the decision to utilize the asphalt divider was unavailable for trial, it is plaintiff's position that the claims court erroneously permitted ODOT to amend its answer to include the defense of sovereign immunity. ODOT contends, in response, that plaintiff failed to timely object to the amendment and that the defense of sovereign immunity was implicitly raised via its third defense in the original answer alleging plaintiff's failure to state a claim for relief.

Given the absence in the record of any indication that plaintiff objected to the amendment or the precise grounds advanced for such objection, this court cannot conclude that the claims court abused its discretion in allowing the amendment. Moreover, given the liberal policy in favor of allowing such amendments, a reviewing court will not reverse the allowance of a Civ.R. 15(A) motion to amend absent evidence of bad faith, undue delay or undue prejudice. *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 12 OBR 1, 465 N.E.2d 377. This court has previously concluded that a party opposing the amendment of an answer to include an affirmative defense must demonstrate *actual* prejudice. *Spies v. Gibson* (1982), 8 Ohio App.3d 213, 8 OBR 285, 456 N.E.2d 1284. No such actual prejudice is apparent in this case. Plaintiff was given a full and fair opportunity at trial to examine the state's witnesses and evidence with respect to the issue of sovereign immunity. There is no indication that plaintiff sought a continuance in order to further depose the single witness who was unavailable for trial. Finally, it is somewhat dubious that plaintiff could be prejudiced with respect to the deposition testimony of the unavailable witness since the amendment involved an affirmative defense which ODOT was required to prove. To the extent the deposition testimony did not fully develop the actual decision-making process used, it is unlikely that such testimony could be utilized by ODOT in proving the affirmative defense. Accordingly, the first assignment of error is overruled.

Under the second assignment of error, plaintiff contends the trial court erroneously found the decision of ODOT to utilize the asphalt median was protected from liability under the doctrine of sovereign immunity. More particularly, plaintiff argues that the claims court erroneously relied upon *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 525 N.E.2d 808. It is plaintiff's position that *Winwood* is distinguishable in that this case does not involve a decision by ODOT as to whether to install a traffic control device but, rather, concerns the selection of an improper traffic control device. Plaintiff maintains that Section 409.53 of ODOT's Location and Design Manual ("L & D Manual") specifies that a temporary concrete median barrier ("TCMB") is the device to be used in separating traffic in a TLTWO. Because ODOT had

previously decided to place a traffic control device, it was required to comply with the mandatory provisions of Section 409.53. As support for this position, plaintiff relies upon this court's decision in *Pierce v. Ohio Dept. of Transp.* (1985), 23 Ohio App.3d 124, 23 OBR 235, 491 N.E.2d 729, and the decision rendered in *Tiley v. Baltimore & Ohio RR. Co.* (Oct. 20, 1988), Miami App. No. 88–CA–7, unreported, 1988 WL 110314.

For the reasons which follow, however, any error by the claims court with respect to the defense of sovereign immunity was nonprejudicial. Even assuming that sovereign immunity was not available as a defense, the claims court's conclusion that ODOT was not negligent in any event supports the judgment in this case. Accordingly, the second assignment of error is overruled.

Under the third and fourth assignments of error, plaintiff contends that the claims court's construction of Section 409.53 of the L & D Manual was erroneous as a matter of law and that its conclusion that ODOT acted reasonably when it utilized the asphalt median as opposed to the TCMB was contrary to the weight of the evidence. More particularly, plaintiff contends that the claims court erred in finding Section 409.53 did not require a TCMB for all TLTWOs regardless of length. It is plaintiff's position that the plain language of that section and the inherent danger of TLTWOs require that Section 409.53 be construed to mandate the use of a TCMB. We do not agree.

Section 409.53 of the L & D Manual provides:

".53 OPPOSING TRAFFIC SEPARATION The TCMB will be used to separate the opposing traffic streams and be located as shown on Fig. 409–6. Overall length of the two way operation is not to exceed 2000 feet. For lengths exceeding 2000 feet contact the Bureau of Location and Design for special approval before proceeding with the maintenance of traffic plan design."

Since this project was greater than two thousand feet, the claims court concluded that Section 409.53 did not require the use of a TCMB, but only required the approval of the Bureau of Location and Design. This court finds such construction of Section 409.53 correct. The language of that section is ambiguous with respect to the type of channelizing device used in TLTWOs of lengths greater then two thousand feet. The testimony at trial regarding the requirements of this section indicated that ODOT utilized TCMBs only on all TLTWOs which were less than two thousand feet in length. Accordingly, plaintiff's third assignment of error is overruled.

With respect to the manifest weight argument set forth in plaintiff's fourth assignment of error, this court finds that there is some competent,

credible evidence to support the claims court's conclusion that ODOT was not negligent in utilizing the asphalt median. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. It is plaintiff's position that the claims court's finding that ODOT was not negligent in deciding to utilize the asphalt median as opposed to TCMB was unsupported by the evidence since (1) the asphalt divider did not receive the benefit of a full ODOT review, the decision being made near the end of the review process; (2) most ODOT engineers were unaware of Section 409.53; and (3) ODOT failed to comply with Section 409.41 of the L & D Manual requiring a cost-benefit analysis in such decisionmaking given plaintiff's unrebutted evidence establishing that the TCMB was more cost effective in guarding against head-on collisions than the asphalt median.

Upon review of the evidence adduced at trial, this court is compelled to conclude that the finding of the claims court that ODOT did not breach its duty to maintain Interstate 70 in a reasonably safe condition is supported by the evidence. Specifically, the decision by ODOT to utilize the asphalt median did not create an *unreasonable* risk of harm to plaintiff's decedents. This evidence indicates that various channelizing devices were considered by ODOT in formulating and reviewing the traffic maintenance plan; that ODOT recognized the necessity of physically separating opposing traffic in a high-speed, high-volume TLTWO; that a TCMB was considered as one such channelizing device, but rejected because of the expense and attendant risks associated with such barrier, including risks to the traveling public posed by decreased widths of the lane imposed by TCMB, the necessity of closing the interstate while installing the TCMB, the potential posed by the TCMB for causing accidents, and the fact that the TCMB rendered highway accidents inaccessible to emergency vehicles; that the asphalt divider provided a highly visible, yet more economical alternative to the TCMB; and that the asphalt divider had been used successfully in North Carolina and recommended by the Federal Highway Administration. Given this evidence, this court cannot conclude that the claims court erred in finding that the decision of ODOT to use the asphalt divider was a reasonable accommodation of both the risks and benefits associated with the device. The fourth assignment of error is overruled.

Finally, via the fifth assignment of error, plaintiff argues that the claims court's proximate cause finding was erroneous. Specifically, plaintiff maintains that because ODOT's decision to utilize the TCMB was unreasonable, such failure to install the concrete barriers was a proximate cause of the deaths at issue in this case. However, as this court noted above, the claims court's finding with respect to the reasonableness of ODOT's decision to use the asphalt median was not contrary to the manifest weight of the evidence.

Absent a breach of any duty by ODOT owed to plaintiff's decedents, the only evidence adduced regarding the proximate cause of the accident was driver error. Accordingly, the claims court did not err in finding that such error was the sole proximate cause of the accident. Plaintiff's fifth assignment of error is overruled.

Having overruled all assignments of error, the judgment of the Court of Claims is affirmed.

*Judgment affirmed.*

REILLY, P.J., and STRAUSBAUGH, J., concur.

GERALD E. RADCLIFFE, J., of the Ross County Common Pleas Court, sitting by assignment.