OPINION
{¶ 1} The State of Ohio appeals pursuant to Crim.R. 12(K) from the trial court's decision and entry sustaining appellee Jaime J. Stritch's motion to suppress evidence.
 {¶ 2} In its sole assignment of error, the State contends the trial court erred in finding no probable cause to support Stritch's arrest for driving while under the influence of alcohol. In support, the State first claims the trial court improperly took judicial notice that administering a horizontal-gaze-nystagmus ("HGN") test with a police cruiser's strobe lights flashing in a DUI suspect's eyes violates standards set by the National Highway Traffic Safety Administration ("NHTSA"). In a second argument, the State asserts that, even if taking judicial notice of such a matter is permissible, the trial court's factual findings regarding the HGN test at issue are unsupported by the record. Finally, the State maintains that probable cause existed to support Stritch's arrest even without considering the results of the HGN test.
 {¶ 3} For the reasons set forth below, we conclude that a trial court may take judicial notice of the standards set by NHTSA, including those governing the administration of the HGN test. In the present case, however, we believe the trial court erred by not giving the State an opportunity to be heard before (1) sua sponte taking judicial notice that administering an HGN test while a suspect is facing a cruiser's strobe lights violates NHTSA standards and (2) sua sponte determining that the officer in the present case administered the HGN test improperly, and rendered the test results unreliable, by placing Stritch where a cruiser's strobe lights were in his field of vision. As a result, we find the State's first two arguments to be persuasive, in part. As for the State's third argument, however, we do not agree that probable cause existed to support Stritch's arrest without considering the results of the HGN test. Accordingly, we will sustain the State's assignment of error in part, reverse the trial court's order sustaining Stritch's motion to suppress, and remand the cause for further proceedings.
 I. Factual and Procedural Background {¶ 4} Following his May 29, 2004, arrest for driving while under the influence of alcohol, Stritch moved to suppress "any and all evidence." The basis for the motion was that "the stop and/or detainment of Defendant was without articulable cause and/or reasonable suspicion and the arrest of Defendant was without probable cause[.]" (Doc. #6). The trial court conducted an evidentiary hearing on August 30, 2004.
 {¶ 5} In an October 8, 2004, decision and entry sustaining Stritch's suppression motion, the trial court summarized the hearing testimony as follows:
 {¶ 6} "Officer [Gregory] Engelhardt of the Centerville Police Department testified that on May 29, 2004, at approximately 2:30 a.m. in Centerville, Ohio, he observed a motor vehicle westbound on East Alex Bell Road near Chardonnay Drive. While observing the vehicle, the driver drove approximately three feet left of center just west of Chardonnay. The officer further observed the driver operate the vehicle with approximately one-half of the vehicle's width left of center near Loop Road, and observed a third left of center violation near Dewberry Place. At that point, the officer stopped the vehicle. Upon approaching the vehicle and requesting the operator's license, the officer detected an odor of alcoholic beverage, and upon inquiry, the Defendant admitted consuming four beers. The officer requested and the Defendant agreed to participate in field sobriety tests. The tests consisted of an alphabet test, balance test, finger to nose test, finger dexterity test, walk and turn test, and horizontal gaze nystagmus test. The officer stated the Defendant performed the alphabet and finger dexterity tests satisfactorily. The balance test required the Defendant to stand with heels together and feet at a forty-five degree angle, arms down and head back for a period of thirty seconds. The Defendant was instructed to hold that posture for thirty seconds while mentally keeping track of passing seconds. The Defendant held the position for twenty-four seconds, and swayed from side to side while performing the exercise. During the finger to nose test, the Defendant did touch his nose with the tip of each index finger as directed by the officer, but did not keep his head tilted back as instructed, and did sway from side to side. For the walk and turn test, the Defendant was instructed to stand heel to toe until instructed to begin, then take nine steps heel to toe while counting each step with his arms at his side, then turn as instructed by the officer and return to the point of origin in the same fashion. The officer indicated the Defendant fell off to his left one time during this test. During the performance of the horizontal gaze nystagmus test, the officer noted lack of smooth pursuit, nystagmus at maximum deviation, and nystagmus prior to forty-five degrees in each eye for a total of six clues. The officer opined, that based upon all of the foregoing, that the Defendant was impaired. At the conclusion of the field sobriety tests, the Defendant was placed under arrest for an alleged violation of Section 4511.19, R.C.
 {¶ 7} "Testimony also was provided by Julie Kays, a passenger in the Defendant's vehicle. Miss Kays testified that Defendant drove in the right hand lane of westbound East Alex Bell Road, and did not change lanes at any time into the left westbound lane. Testimony from the Defendant regarding his operating the vehicle on East Alex Bell Road echoed that of Miss Kays. The Defendant further testified that he had consumed four beers between 5:30 p.m. to 2:00 a.m." (Doc. #13 at 1-2).
 {¶ 8} In addition to hearing the foregoing testimony, the trial court viewed a police videotape of the stop and field sobriety tests and made the following findings concerning it:
 {¶ 9} "* * * The Court, in viewing the videotape, noted that the Defendant's swaying during the balance test and the finger to nose test was very slight, that the Defendant's stumbling or falling off line during the walk and turn test was also slight, and that the police cruiser's light bar was operating and flashing in the Defendant's face during the performance of the horizontal gaze nystagmus test. The officer testified that this test was given pursuant to National Highway Transportation Safety [Administration] (NHTSA) standards. However, the Court on numerous occasions has heard testimony that this particular test requires that the person being subjected to the test not have flashing lights within his/her field of vision. Further, the Court has never heard testimony contradictory to this position at any time in prior hearings." (Id. at 2).
 {¶ 10} After summarizing the hearing testimony and setting forth its observations regarding the videotape, the trial court held that Officer Engelhardt had reasonable, articulable suspicion to believe that Stritch had violated the law by driving left of center. As a result, the trial court rejected Stritch's argument that Engelhardt had no basis for making a traffic stop. The trial court then concluded, however, that Engelhardt lacked probable cause to arrest Stritch for driving under the influence of alcohol. In support, the trial court reasoned as follows:
 {¶ 11} "* * * The Court notes the officer detected the odor of an alcoholic beverage emanating from the Defendant, but did not provide any testimony as to the intensity of the same. Further, there is a lack of testimony of observed slurred speech, bloodshot eyes, fumbling for operator's license or proof of insurance, or other indicia of intoxication. Additionally, of the three NHTSA tests (HGN, walk and turn, and balance test), the Court finds the Defendant performed two (walk and turn, and balance test) adequately, and the third (HGN) was not administered pursuant to NHTSA directive. As previously stated, the described swaying and falling off line were slight. In considering all of the foregoing, including the aforedescribed traffic violation that gave rise to the stop, the Court finds there is a lack of evidence of the Defendant's motor impairment due to the ingestion of alcoholic beverages. Accordingly, the officer lacked probable cause to arrest the Defendant for a violation of Section 4511.19, R.C. * * *" (Id.).
 {¶ 12} Upon finding a lack of probable cause to arrest, the trial court sustained Stritch's motion and suppressed the results of a breathalyzer test that had been administered following his arrest. The State subsequently filed a timely notice of appeal with the certification required by Crim.R. 12(K).
 II. Analysis {¶ 13} On appeal, the State first contends the trial court improperly relied on information outside the record to find that Officer Engelhardt did not perform the HGN test in compliance with NHTSA standards. This argument concerns the trial court's statement that "on numerous occasions [it] has heard testimony that this particular test requires that the person being subjected to the test not have flashing lights within his/her field of vision." Given that no such testimony was presented in this case, the State argues that the trial court must have taken judicial notice of testimony from prior, unrelated proceedings. The State also notes that the trial court raised this issue sua sponte in its suppression ruling without giving the parties prior notice of its intent to do so.[1]
 {¶ 14} Although we agree that it is inappropriate for a trial court to take judicial notice of testimony from unrelated proceedings, the record supports an alternative reading of the trial court's ruling. The trial court concluded that Engelhardt did not administer the HGN test "pursuant to NHTSA directive" because a police cruiser's rotating lights were flashing in Stritch's face. This finding demonstrates that the trial court actually took judicial notice of the NHTSA standards governing the administration of HGN tests.
 {¶ 15} The taking of judicial notice is governed by Evid.R. 201. Under Evid.R. 201(B), "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."
 {¶ 16} In State v. Shepard, Miami App. No. 2001-CA-34, 2002-Ohio-1817, we opined that "perhaps" a trial court could take judicial notice of the NHTSA manual, but we did not resolve the issue. At least one other Ohio court, however, has taken judicial notice of the NHTSA instruction manual on field sobriety tests. See State v. Perry, 129 Ohio Misc.2d 61,2004-Ohio-7332. Upon review, we now agree that a trial court may take judicial notice of the NHTSA standards governing the administration of field sobriety tests, including the HGN test. In Shepard, we recognized that the applicable testing procedures in Ohio are set forth in the DWI Detection Standardized Field Sobriety Testing Student Manual published by NHTSA. These standards are not subject to reasonable dispute because they are capable of accurate and ready determination by reference to the NHTSA manual itself, a source whose accuracy cannot be questioned given its status as the seminal authority in this area. As a result, NHTSA standards governing the administration of the HGN test are subject to judicial notice under Evid.R. 201(B).
 {¶ 17} Under Evid.R. 201, taking judicial notice may be either mandatory or discretionary. Judicial notice is mandatory when a party requests notice of an appropriate fact and provides the trial court with the necessary information. Evid.R. 201(D). A trial court also possesses the discretion, however, to take judicial notice of an appropriate matter sua sponte. Evid.R. 201(C). In the present case, neither the State nor Stritch asked the trial court to take judicial notice of the NHTSA standards applicable to HGN tests. Rather, the trial court took judicial notice of those standards itself.
 {¶ 18} Although Evid.R. 201(C) permits a trial court to take judicial notice sua sponte, the rule also provides for an opposing party's opportunity to be heard. In particular, Evid.R. 201(E) states: "A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter to be noticed. In the absence of prior notification, the request may be made after judicial notice has been taken."
 {¶ 19} In the present case, the State had no prior notification of the trial court's intent to take judicial notice of the NHTSA standards governing administration of the HGN test. The State also had no prior notice of the trial court's intent to sustain Stritch's motion based on an issue not argued by defense counsel, namely that Officer Engelhardt had violated the applicable NHTSA standards by administering the HGN test while a police cruiser's strobe lights were flashing in Stritch's face. Under Evid.R. 201(E), the State would have a right to challenge a trial court's taking of judicial notice and sua sponte finding of a violation by seeking an after-the-fact opportunity to be heard on the matter. We note, however, that the post-judicial-notice opportunity to be heard granted by Evid.R. 201(E) was illusory in the present case.[2] "When a trial court's ruling on a motion to suppress evidence so weakens the state's case that effective prosecution is impossible, the entry sustaining the motion to suppress amounts to a final appealable order."State v. Flynn (March 6, 1987), Montgomery App. No. 10152. In addition, Crim.R. 12(K) obligates the State to appeal an adverse suppression rulingwithin seven days, and the State's filing of a motion for reconsideration or clarification of a trial court's order suppressing evidence does not extend the time for filing an appeal under Crim.R. 12(K). State v.Bassham, 94 Ohio St.3d 269, 270-272, 2002-Ohio-797.[3] In fact, the motion for reconsideration or clarification is itself a nullity. Id.; see also Flynn, supra.
 {¶ 20} In light of the foregoing facts, we conclude that a request by the State to be heard under Evid.R. 201(E) is not a viable option when a trial court sua sponte has taken judicial notice in a suppression ruling that destroys the State's ability to prosecute its case. In the context of such a ruling, it follows that a trial court must give the partiesprior notice of its intent to take judicial notice of a matter. This is so because, as demonstrated above, the State cannot avail itself of the relief typically afforded by Evid.R. 201(E) when a trial court takes judicial notice without first giving a party an opportunity to be heard.
 {¶ 21} In short, procedural fairness demands that the State be given an opportunity to respond to the trial court's sua sponte decision to take judicial notice of the NHTSA standards governing the HGN test and to its concomitant conclusion that Officer Engelhardt violated those standards. Cf. State v. Spitzer (Jan. 26, 2000), Medina App. No. 2848-M (recognizing that "a party who challenges the taking of judicial notice is entitled to a hearing on the matter by way of procedural fairness under Evid.R. 201(E)"); Ambrose v. Ambrose (Feb. 16, 1990), Geauga App. No. 88-G-1479 (reasoning that "[t]aking judicial notice after trial is improper when it deprives a party of the opportunity to adduce evidence on a critical fact placed in issue by the court's action"). Accordingly, we find the State's first argument to be persuasive, insofar as it challenges the trial court's taking of judicial notice of the applicable NHTSA standards and finding a violation of those standards without giving the parties prior notice of its intent to do so.
 {¶ 22} In a second argument, the State challenges the trial court's factual finding that a police cruiser's strobe lights were flashing in Stritch's face. Even if the lights were flashing as the trial court found, the State contends the record is devoid of testimony that such a fact would render the HGN test results invalid.
 {¶ 23} Having reviewed the videotape of Stritch's field sobriety tests, we note that he appears to have been in the line of sight of flashing strobe lights from a police cruiser when Officer Engelhardt administered the HGN test. We also note that the DWI Detection Standardized Field Sobriety Testing Student Manual (2000) published by NHTSA instructs law enforcement officers to "always face [a] suspect away from rotating lights, strobe lights and traffic in close proximity." See NHTSA Student Manual (2000) at VIII-16; See also NHTSA Instructor Manual (2000) at VIII-57 ("NOTE: Always face suspect away from flashing or strobe lights."). The apparent purpose of this requirement is to avoid "optokinetic nystagmus," which "occurs when the eyes fixate on an object that suddenly moves out of sight, or when the eyes watch sharply contrasting moving images." NHTSA Student Manual (2000) at VIII-4. "Examples of optokinetic nystagmus include watching strobe lights, rotating lights, or rapidly moving traffic in close proximity."[4]
Id.; see also NHTSA Instructor Manual (2000) at VIII-8.
 {¶ 24} Given that we must remand this action for the trial court to give the State an opportunity to be heard on the matters discussed above, we express no opinion as to whether Stritch's position in relation to the police cruiser's strobe lights rendered the results of the HGN test unreliable. We will leave it to the trial court in the first instance to address the State's arguments regarding the reliability of the HGN test and whether the record reflects substantial compliance with the applicable NHTSA standards. See State v. Faul, Montgomery App. No. 20579, 2004-Ohio-6225 at ¶ 20 (recognizing that the "substantial compliance" standard applies to field sobriety tests administered on or after April 9, 2003).
 {¶ 25} In a final argument, the State contends Officer Engelhardt had probable cause to arrest Stritch for driving while under the influence of alcohol even without considering his performance on the HGN test.
 {¶ 26} Upon review, we find the State's argument to be without merit. At a motion to suppress hearing, the trial court is the trier of fact and, thus, is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Retherford (1994),93 Ohio App.3d 586, 592. Due to the trial court's position, we give deference to the trial court's findings of fact if they are supported by competent, credible evidence. Id. We conduct a de novo review, however, to determine whether the facts meet the applicable legal standard.Ornelas v. United States (1996), 517 U.S. 690. An officer has probable cause to arrest if the facts and circumstances within his knowledge are sufficient to warrant a prudent person's believing that the defendant committed the offense. State v. Homan, 89 Ohio St.3d 421, 427,2000-Ohio-212. In making a probable cause determination, courts are to consider the totality of the facts and circumstances surrounding the arrest. Id.
 {¶ 27} In the present case, the State relies on several facts and circumstances to support its argument that Officer Engelhardt had probable cause to arrest Stritch for driving while under the influence of alcohol even absent the HGN test. First, the State stresses that Engelhardt saw Stritch's truck move approximately three feet across the center line three times. Second, the State notes that upon initiating a traffic stop, Engelhardt detected the odor of alcohol and Stritch admitted consuming four beers. Finally, the State argues that Stritch performed relatively poorly on the field sobriety tests other than the HGN test. In particular, the State contends Stritch failed to stand upright and motionless while silently counting to thirty during the balance test. The State also notes that Stritch failed to estimate thirty seconds accurately while performing this test. Only twenty-four seconds had elapsed when Stritch stopped his silent count. In addition, the State argues that Stritch swayed during the finger-to-nose test and failed to keep his head tilted back.
 {¶ 28} Having reviewed the trial court's ruling and the videotape of the field sobriety tests, we conclude that Officer Engelhardt lacked probable cause to arrest Stritch. Without question, the driving observed by Engelhardt militates in favor of finding probable cause to arrest Stritch for driving while under the influence of alcohol. Likewise, the fact that Stritch smelled of alcohol and admitted consuming four drinks weighs in the State's favor.
 {¶ 29} In our view, however, all of the remaining evidence in this case supports the trial court's finding of no probable cause. Although Stritch admitted drinking four beers, Officer Engelhardt never inquired about the time period over which they were consumed.[5] Thus, Stritch's admission to drinking carries less weight in our probable cause calculus than it otherwise might. We also note the absence of any testimony from Engelhardt about Stritch having slurred speech or bloodshot eyes, or exhibiting other common characteristics of intoxication. But the strongest evidence in Stritch's favor is the videotape of his field sobriety tests. We agree with the trial court's assessment that the defects in Stritch's performance were minor. Having reviewed the videotape carefully, we conclude that Stritch performed the tests satisfactorily and gave Officer Engelhardt no real reason to believe that he was under the influence of alcohol. In addition to his good performance on the tests, Stritch conversed intelligently with Engelhardt and had no difficulty recalling detailed information, including the dosage of various medications that he was taking. In summary, we conclude that Stritch's performance on the field sobriety tests and his interaction with Officer Engelhardt after being stopped dispelled any reasonable basis to believe that he was under the influence of alcohol that may have arisen as a result of his crossing the center line and admitting consuming four beers. Accordingly, we reject the State's argument that Officer Engelhardt had probable cause to arrest Stritch for driving while under the influence of alcohol even without considering the results of the HGN test.
 III. Conclusion {¶ 30} Based on the reasoning and citation of authority set forth above, we hold that the trial court erred in failing to give the parties prior notice of its intent to take judicial notice of the NHTSA standards governing the HGN test and its belief that Officer Engelhardt had violated those standards. Accordingly, we sustain the State's assignment of error in part, reverse the trial court's decision and entry sustaining the appellee's motion to suppress, and remand the cause for a new hearing limited to the admissibility of the arresting officer's observations and conclusions regarding the appellee's performance on the HGN test.[6] We overrule the State's assignment of error, however, insofar as it asserts that probable cause existed to arrest the appellee for driving while under the influence of alcohol even without considering the results of the HGN test.
 {¶ 31} Judgment reversed and cause remanded.
Fain, J., and Young, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio)
[1] In his appellate brief, Stritch contends the State cannot challenge the trial court's ruling with regard to the HGN test. Stritch argues the State's only assignment of error addresses a different issue, namely whether the trial court erred in finding a lack of probable cause to arrest. It is apparent to us, however, that the State's assigned error consists of several sub-parts, one of which challenges the trial court's ruling on the issue of the HGN test. As a result, the issue is properly before us.
[2] For this reason, we conclude that the State properly filed a direct appeal from the trial court's suppression ruling rather than seeking an after-the-fact opportunity to be heard on the judicial-notice issue under Evid.R. 201(E).
[3] The State also cannot extend the time for seeking reconsideration or clarification of a ruling suppressing evidence by delaying filing its Crim.R. 12(K) certification. The seven-day time period begins to run when a trial court's order suppressing evidence is filed without regard to when the State files its Crim.R. 12(K) certification. Bassham,94 Ohio St.3d at 270-272.
[4] Parenthetically, we note that the NHTSA manual also warns of other non-alcoholrelated causes of nystagmus, including "seizure medications and some other drugs." NHTSA Student Manual (2000) at VIII-8. Prior to undergoing the HGN test in the present case, Stritch clearly informed Officer Engelhardt that he was taking a medication known as Phenobarbitol to control seizures.
[5] At trial, Stritch testified that he had consumed the four beers over a period of approximately seven or eight hours. The trial court made no factual finding on this issue.
[6] In light of our conclusion herein that no probable cause to arrest existed absent the results of the HGN test, the trial court need not rehear all of the testimony presented at the prior suppression hearing. The sole purpose of our remand is to allow the State to challenge the trial court's sua sponte finding that Officer Engelhardt violated NHTSA standards and rendered the HGN test results unreliable by administering the test while flashing lights were in the appellee's field of vision. We express no opinion on this issue, which should be addressed by the State in the trial court in the first instance.