STEELE et al., Appellants and Cross–Appellees,

v.

OHIO DEPARTMENT OF TRANSPORTATION, Appellee and Cross–Appellant.

[Cite as *Steele v. Ohio Dept. of Transp.*, 162 Ohio App.3d 30, 2005-Ohio-3276.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–729.

Decided June 28, 2005.

Mark Serrott Co., L.P.A., and Mark A. Serrott, for appellants and cross-appellees.

Jim Petro, Attorney General, and Velda K. Hofacker–Carr, Assistant Attorney General, for appellee and cross-appellant.

PETREE, Judge.

{¶ 1} Plaintiffs-appellants and cross-appellees, Tommy D. and Marieta Steele ("appellants"), appeal from a judgment of the Court of Claims that determined that appellants failed to prove negligence by a preponderance of the evidence,

thus finding in favor of defendant-appellee and cross-appellant, the Ohio Department of Transportation ("ODOT"), in this action arising out of a motorcycle accident.

{¶ 2} The June 20, 1999 accident occurred during good weather along a section of State Route 4 in Union County. Appellants were both riding a motorcycle, with Mr. Steele driving, when they approached an S curve. Although the regular speed on that section of S.R. 4 was posted at 55 m.p.h., the approach to the S curve warned motorists to slow to 25 m.p.h. Mr. Steele was going over 25 m.p.h. as he attempted to negotiate the second half of the S curve. At that point, he lost control, skidding off the road into a grassy area adjacent to the roadway. At some point, both appellants were thrown from the motorcycle.

{¶ 3} Also in this location was a stormwater catch basin, which consisted of a manmade drain hole with a metal grate over the opening. At the time of the crash, the grate was apparently damaged, and someone had placed a wooden pallet as a guard over the catch basin opening. As appellants skidded off the road, Mr. Steele alleges, his left hand hit the pallet, causing serious injury. Appellants consequently initiated their cause of action against ODOT, based upon claims of negligence in placing the pallet over the damaged grate and in failing to maintain a "clear zone" next to the roadway.

{¶ 4} The Court of Claims bifurcated appellants' issues of liability and damages and tried the case on the issue of liability, ultimately concluding that ODOT was not liable. In its June 18, 2004 decision, the court stated:

While plaintiffs argue that defendant breached its duty to maintain the clear zone of the roadway free from obstructions, the court finds that defendant's policy pertains to roadway design, not maintenance. Furthermore, even assuming that defendant breached its duty, the court finds that plaintiffs have failed to prove that any lack of required maintenance was the proximate cause of the accident.

Drivers upon Ohio's highways have a duty to maintain control of their vehicles on the traveled portion of the roadway. Pursuant to R.C. 4511.20.2: "[n]o person shall operate a motor vehicle, * * * on any street, highway, or property open to the public for vehicular traffic without being in reasonable control of the vehicle." The court finds that under the circumstances of this case, plaintiff's failure to maintain reasonable control of his motorcycle was the sole and proximate cause of the accident.

{¶ 5} Appellants appeal and have raised two assignments of error, as follows:

I. The trial court erred as a matter of law in finding that ODOT could not be liable for the negligent creation of hazards along the roadside.

II. The court's holding that it could not find that ODOT placed the pallet over the catch basis in [sic] contrary to the manifest weight of the evidence.

{¶ 6} ODOT has filed a cross-assignment of error in which it argues:

The Court of Claims erred in failing to hold in the alternative that even if ODOT were negligent, the negligence of Mr. Steele constituted an intervening, superceding [sic] cause relieving ODOT of any liability.

{¶ 7} Appellants' first assignment of error charges the trial court erred in reasoning that ODOT could not be liable because the pallet did not directly jeopardize the safety of traffic on the roadway. According to appellants, because it was foreseeable that motorists would leave the roadway, and because ODOT's Location and Design Manual ("L&D Manual") recognizes this by indicating that ODOT should maintain a "clear zone"—or area free from obstructions—next to the roadway, the trial court erred as a matter of law in finding for ODOT.

{¶ 8} In order to prove actionable negligence, appellants had to show that ODOT owed them a duty, that ODOT breached that duty, and that the breach proximately caused them injury. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. Although ODOT is not an insurer of the safety of its highways, ODOT owed appellants a duty of care, which was to maintain its highways in a reasonably safe condition for the motoring public. *Knickel v. Dept. of Transp.* (1976), 49 Ohio App.2d 335, 3 O.O.3d 413, 361 N.E.2d 486.

{¶ 9} We first address appellants' argument that the placement of the pallet over the catch basin violated pertinent sections of the L&D Manual. Section 600.2 of the L&D Manual provides:

*Clear Zone* refers to the desirable unobstructed area along a roadway, outside the edge of traveled way, available for the safe recovery of vehicles that have left the traveled way. Within this area, most motorists will be able to safely regain control of their vehicle. Ideally, there should be no obstructions within the clear zone; however, if an obstruction cannot be removed, then engineering judgement must be used to determine how to treat it.

\* \* \*

The overall intent of roadside design is to strive for a forgiving highway. Designing a project exclusively to meet minimum clear zone values may result in a roadside that is not as safe as it could be. On the other hand, the cost of clearing some roadsides may greatly exceed the associated benefits to the traveling public. The optimum solution lies in the judicious application of engineering judgment coupled with a sincere desire to produce safe roadways.

{¶ 10} Interpreting this section, both our court and the Sixth District Court of Appeals have determined that the manual's suggestions regarding clear zones do not give rise to a duty to remove existing structures from the clear zone unless the structures interfere with safe travel on the regularly traveled portion of the highway. *Floering v. Roller,* Wood App. No. WD–02–076, 2003-Ohio-5679, 2003 WL 22417127; *Hurier v. Ohio Dept. of Transp.,* Franklin App. No. 01AP–1362, 2002-Ohio-4499, 2002 WL 2005755. Thus, even if appellants here established that the catch basin was in the clear zone, that ODOT had placed the pallet over the grate, and that the location of the catch basin and/or the pallet did not comply with the L&D Manual, the manual's guidelines did not impose a duty upon ODOT to remove anything unless it interfered with safe travel on the regularly traveled portion of S.R. 4. Therefore, we reject appellants' argument that any failure by ODOT to comply with suggestions contained in Section 600 of the L&D Manual, standing alone, could be used as a basis for finding liability.

{¶ 11} Appellants maintain that they have a viable negligence claim even without applying the guidelines in the L&D Manual. Cases addressing state or political subdivision liability for injuries to motorists caused by off-road obstructions typically have focused upon whether the offending structure directly jeopardizes the safety of the ordinary traffic on the roadway. In *Harris v. Ohio Dept. of Transp.* (1992), 83 Ohio App.3d 125, 614 N.E.2d 779, this court followed *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Road Comm.* (1992), 63 Ohio St.3d 318, 587 N.E.2d 819, in determining that an embankment located in the median strip of a highway was not a condition in the right-of-way for which ODOT could be liable because, to encounter it, the motorist had to leave the traveled portion of the roadway. The appellants in that case argued that because the purpose of the median was to provide an emergency stopping zone for vehicles leaving the road, the presence of the embankment was a nuisance because it interfered with the safety of motorists using the median in an emergency. In response, we stated:

In *Dickerhoof* [*v. Canton* (1983), 6 Ohio St.3d 128, 6 OBR 186, 451 N.E.2d 1193], the vehicle left the roadway because it swerved to miss an object in the roadway and, thus, had to drive on the shoulder. In the case before us, appellants do not argue that there was an obstruction in the roadway which forced them into the median; rather, it was the negligence of the driver that caused the vehicle to leave the roadway. Moreover, there was uncontradicted deposition testimony that, unlike a paved shoulder, a median is not designed for driving, but for separating lanes of traffic.

\* \* \*

Finally, in *Dickerhoof,* there was evidence that the shoulder was in poor repair and that a chuckhole had caused the accident. In this case, although

there was conflicting testimony regarding exactly how a proper catch basin and earthen dike should be constructed, the evidence did not support the view that the condition of the embankment on the night of the accident constituted a nuisance to traffic on the roadway but, rather, only when the vehicle left the regularly traveled portion of the highway.

Id. at 130, 614 N.E.2d 779.

{¶ 12} These statements are particularly relevant to the case at bar. Appellants did not encounter the pallet until they left the regularly traveled portion of the road. Although some testimony indicated there was gravel on the road that might have contributed to Mr. Steele's losing control of the motorcycle, ODOT's expert witness, accident reconstructionist James Crawford, denied that gravel was a factor in the accident. Instead, Crawford opined that, just prior to losing control, appellants were traveling at a rate of speed of at least 44 m.p.h., well over the suggested speed for that segment of roadway.

{¶ 13} At trial, both sides disputed whether ODOT had placed the pallet over the catch basin and whether Mr. Steele's hand ever actually came into contact with the pallet. In addition, there was disagreement about when ODOT learned of the broken grate and how quickly ODOT repaired it. Although two neighbors testified that they had notified ODOT in June 1999 that the catch basin grate was broken, that the pallet appeared over the catch basin that same day, and that it was at least a month before ODOT addressed the problem, Virgil Reisinger, ODOT's transportation manager for the Marysville garage, testified that he did not learn about the broken grate until August 5, 1999, at which time he sent out a welder and the grate was repaired within 24 to 48 hours.

{¶ 14} Appellants point out that ODOT witnesses admitted that the use of a pallet to cover a broken catch basin grate would have been careless and would have created a hazard for motorists leaving the roadway. From these statements, appellants argue that it follows that ODOT was, in fact, negligent. However, we agree with the Court of Claims that, even if the evidence supported the view that ODOT was responsible for placing the pallet over the grate, and even if the use of a pallet in this instance was inappropriate, appellants failed to establish that it was the presence of the pallet that proximately caused their injuries. As the Court of Claims stated:

* * * The catch basin was located adjacent to the shoulder of the roadway in a grassy area. Plaintiff drove through the grassy area to try to recover after losing control of his motorcycle on the roadway. Accordingly, the court finds that defendant did not breach its duty to maintain the roadway in a reasonably safe condition.

{¶ 15} Obviously, when an operator loses control of a vehicle, the vehicle and its occupants can leave the traveled portion of the road, sometimes striking fixtures or coming to rest far from the roadway. It would be unreasonable to expect ODOT to remove all structures, trees, utility poles, and other obstacles from areas distant from the roadway, and the law does not so require. See, e.g., *Neiderbrach v. Dayton Power & Light Co.* (1994), 94 Ohio App.3d 334, 342, 640 N.E.2d 891. Instead, the test is whether ODOT is responsible for maintaining a condition that renders the regularly traveled portions of the highway unsafe for the usual and ordinary course of travel. See *Manufacturer's Natl. Bank*, supra, 63 Ohio St.3d 318, 587 N.E.2d 819, at paragraph one of the syllabus. Because we agree with the trial court that appellants failed to demonstrate that the presence of the pallet (regardless of who put it there or why) did not render the regularly traveled portions of S.R. 4 unsafe for the usual and ordinary course of travel, and because the evidence clearly established that it was Mr. Steele's excessive speed that caused the accident, we overrule appellants' first assignment of error.

{¶ 16} Appellants' second assignment of error asserts that the trial court erred in refusing to find that ODOT had placed the pallet over the catch basin, thus arguing that the court's conclusion was against the manifest weight of the evidence. Given our disposition of appellants' first assignment of error, we find this assignment of error to be moot.

{¶ 17} Having overruled appellants' first assignment of error and having found their second assignment of error moot, we need not reach ODOT's cross-assignment of error, as it is also moot.

{¶ 18} Based upon the foregoing, appellants' first assignment of error is overruled, appellants' second assignment of error and ODOT's cross-assignment of error are moot, and the judgment of the Court of Claims of Ohio is affirmed.

Judgment affirmed.

SADLER and FRENCH, JJ., concur.