**The STATE of Ohio**

v.

**HATFIELD.**

 2010-Ohio-4003.]

Morrow County Municipal Court.

No. 5911–2009–TRC–454.

Decided June 16, 2010.

Eric C. Penkal, Assistant Prosecuting Attorney, for plaintiff.

W. Jeffrey Moore, for defendant.

McClelland, Judge.

{¶ 1} This matter came before the court on June 22, 2009, for a hearing on defendant's motion to suppress filed March 2, 2009. The defendant, Dave R. Hatfield, was present and represented by W. Jeffrey Moore, Attorney at Law. Eric C. Penkal, Assistant Prosecuting Attorney, was present on behalf of the state of Ohio.

{¶ 2} The defendant moves to suppress evidence obtained from "tests of Defendant's coordination and/or sobriety and/or alcohol * * * level, including * * * chemical tests of Defendant's alcohol * * * level, observations and opinions of the police officer(s) who stopped the Defendant and arrested and tested the Defendant regarding Defendant's sobriety and/or alcohol level, any evidence involving and relating to alcohol," on the grounds that the officer did not have reasonable and articulable suspicion to believe that a traffic offense had occurred and thus had no grounds to stop and detain the defendant or probable cause to arrest the defendant without a warrant.

{¶ 3} At the hearing on the motion to suppress, the testimony revealed that the defendant was westbound on Township Road ("TR") 49 at 12:00 A.M. when Trooper Johnson of the Ohio State Highway Patrol observed the defendant driving, almost continuously, down the center of TR 49. The trooper observed no other erratic driving or traffic violation. The trooper activated his lights and

video camera and after a short distance, the defendant pulled to the side of the road. The trooper approached the defendant's vehicle and explained why he had stopped him. The defendant stated that he always drove down the center of county roads to avoid potholes and, potentially, deer.

{¶ 4} TR 49 is a blacktop township road with no centerlines or fog lines, measuring approximately 19 feet in width. At the time of the stop, the roadway was dark, wet, and contained no other traffic. Snow and/or ice covered the ground on each side of the roadway. Defendant is charged with driving left of center in violation of R.C. 4511.25(A) and OVI in violation of R.C. 4511.19(A)(1)(a).

{¶ 5} The threshold issue is whether the trooper had a reasonable and articulable suspicion that the defendant committed or was committing a traffic violation. *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 11, 665 N.E.2d 1091.

{¶ 6} R.C. 4511.25(A) requires that motor vehicles be driven on the right half of the roadway "upon all roadways of sufficient width." The Ohio Supreme Court defined "sufficient width" to be "the width sufficient to allow a vehicle lawfully on the roadway to remain in the right half of the roadway." *State v. Leichty* (1993), 68 Ohio St.3d 37, 623 N.E.2d 48.

{¶ 7} In this case, involving a narrow, unmarked rural roadway, the court felt it necessary to look beyond the record to further define the term "sufficient width." The court defers to the Ohio Department of Transportation Roadway Design Manual ("ODTRD Manual"; also known as the "Location and Design Manual") to determine "sufficient width" as applied to TR 49. Since the Ohio Rules of Evidence do not apply to a pretrial determination of the admissibility of evidence, the Location and Design Manual does not need to meet foundational evidence requirements to be admitted as evidence in this hearing. Evid.R. 101(C)(1); *State v. Boczar* (2007), 113 Ohio St.3d 148, 863 N.E.2d 155.

{¶ 8} Ohio courts regularly cite the Location and Design Manual as authority. See *Rahman v. Ohio Dept. of Transp.*, 10th Dist. No. 05AP–439, 2006-Ohio-3013, 2006 WL 1645021, ¶ 38 ("ODOT also developed the [Location and Design Manual], which establishes policies and standards to follow when designing and maintaining highways in a reasonably safe condition"); *Steele v. State*, 162 Ohio App.3d 30, 2005-Ohio-3276, 832 N.E.2d 764; *Floering v. Roller*, 6th Dist. No. WD–02–076, 2003-Ohio-5679, 2003 WL 22417127; *Balbach v. Ohio Dept. of Transp.* (1990), 67 Ohio App.3d 582, 587 N.E.2d 912.

{¶ 9} Use of the ODTRD Manual is also analogous to the precedent of using the National Highway Traffic Safety Administration's Manual ("NHTSA Manual") for field sobriety testing used when determining probable cause to arrest in OVI stops. *State v. Bemiller*, 5th Dist. No. 04CA0109, 2005-Ohio-4404, 2005 WL

2045154; *State v. Verity*, 5th Dist. No. 2009CA00156, 2010-Ohio-1151, 2010 WL 1045488.

{¶ 10} There is also authority that courts have the option to take judicial notice of the NHSTA Manual, since the standards in the manual relating to field sobriety testing "are not subject to reasonable dispute." *State v. Stritch*, 2nd Dist. No. 20759, 2005-Ohio-1376, 2005 WL 678938, ¶ 16; *State v. Wells*, 2nd Dist. No. 20798, 2005-Ohio-5008, 2005 WL 2327125, ¶ 32. This court disagrees with the judicial-notice approach because the NHTSA Manual is certainly subject to reasonable dispute.[1]

{¶ 11} TR 49 is 19 feet wide, leaving nine and one-half feet for each vehicle from the center of the roadway to the edge. According to the ODTRD Manual the "lane width in rural areas is dependent upon functions classification, traffic volumes and design speed." Location and Design Manual, Volume 1, Roadway Design, Section 301.1.2. The standard lane width for a rural road is less than nine and one-half feet when the average daily traffic ("ADT") is less than 400 vehicles and the speed limit is 40 mph or less. Id. at Section 301–2E. For rural roadways with an ADT of greater than 400 vehicles or with a speed limit greater than 40 mph, the minimum lane width is between ten and 12 feet. Id. It appears to this court that the speed limit on TR 49 is 55 miles per hour. TR 49 falls within R.C. 4511.21(B)(5), which indicates a speed limit of "[f]ifty-five miles per hour on highways outside municipal corporations." This section is the only section that applies to TR 49 because it is both outside of a municipal corporation and because it is considered a "highway" under R.C. 4511.01(BB) (" 'Street' or 'highway' means the entire width between the boundary lines of every way open to the use of the public as a thoroughfare for purposes of vehicular travel").[2]

{¶ 12} In addition, this court determines, based on the ODTRD Manual, that the safety factors involved dictate the minimum lane width to be between ten and 12 feet or a total width of 20 to 24 feet to be of "sufficient width."

{¶ 13} The township must also view the road as too narrow to "stripe." If the township added two fog lines (approximately eight inches) and two centerlines (approximately ten inches), the area open to travel in each direction would be

---

1. See M. Burns, A Colorado Validation Study of the Standardized Field Sobriety Test (SFST) Battery, Final Report Submitted to the Colorado Department of Transportation, November 1995.

2. "Roadway" as used in R.C. 4511.25(A) is defined as "that portion of a highway improved, designed, or ordinarily used for vehicular travel, except the berm or shoulder" (R.C. 4511.01(EE)). "Highway" is defined as "the entire width between the boundary lines of every way open to the use of the public as a thoroughfare for purposes of vehicular travel" (R.C. 4511.01(BB)). Although the definitions vary slightly, they are considered the same for the purposes of this opinion.

reduced to less than nine feet. Further, at the time of the incident, snow and/or ice covered both sides of the roadway and the condition of the road was wet and dark. Although a car or pickup truck could be driven on the right half of the roadway, a common-sense look at TR 49 and reading of the ODTRD Manual indicates that even under perfect conditions and at a speed approaching the lawful limit, such operation would be unsafe. For the forgoing reasons, the court finds that TR 49 is not of "sufficient width" as required by R.C. 4511.25.

{¶ 14} It is therefore the opinion of this court that the defendant did not violate R.C. 4511.25(A). There was also no evidence of erratic driving to justify a non-*Erikson* stop. Absent any extraordinary circumstances, including but not limited to on-coming traffic or the defendant's vehicle cresting the top of a hill, the trooper did not have a reasonable and articulable suspicion that the defendant was committing a traffic violation. This court hereby grants the defendant's motion to exclude all evidence gathered from the illegal stop and any evidence that fell from its poisonous tree.

So ordered.